THE TRUSTEES OF THE GERMAN EVANGELICAL CONGREGATION OF NEW ELM vs. HOESSLI and others.

A complaint by the trustees of an incorporated religious society alleged that the plaintiffs were in possession of, and held in trust for said society, all its real and personal property, including a meeting house used for stated divine service, and that the defendants, under the false pretense of being themselves the trustees of said society, had often interfered with its property, and threatened to take into their custody all its temporalities, and transact all affairs relative thereto; and prayed for a perpetual injunction, restraining them from interfering with such property, &c., or using the name of such corporation. *Held*, on demurrer, that the action was properly brought by the trustees in their own (corporate) name, and not in the name of the state.

*Held*, also, that the complaint showed a proper case for an injunction.

Although the writ of injunction is abolished by chap. 129 of the Revised Statutes, still when the complaint lays a foundation for an injunction, it will be granted, whether as a final judgment or as a provisional remedy, in all cases where it would have been allowed under the old chancery practice.

Section 2, chapter 129, R. S., 1858, rather enlarges than restricts the power of the court over the remedy by injunction.

In cases of private trespass an injunction will generally not be granted, because the party aggrieved has an adequate remedy at the common law.

But where the injury complained of goes to the destruction of the estate in the character in which it is enjoyed, or where the mischief would be irremediable and such as damages would not compensate, courts of equity will grant an injunction.

APPEAL from the Circuit Court for *Winnebago* County.

The complaint in this case alleged the following facts: That on the 8th of September, 1851, the members then belonging to the religious society called the German Evangelical Con-

gregation in New Elm, (in the county of Winnebago,) not then incorporated, having previously been duly notified, met together at the place then used by them for stated divine worship, and duly elected three of their number trustees to take charge of the property of said religious society, and to transact all affairs relative to the temporalities thereof, and resolved that said trustees and their successors in office should forever after be known as "The Trustees of the German Evangelical Congregation in New Elm;" that a certificate of the proceedings of this meeting, in due form and properly acknowledged, (a copy of which is set forth in the complaint,) was duly recorded, in the same month, in the clerk's office of said county; that thereupon said trustees became a body corporate, by the name aforesaid; that one trustee had thereafter been annually elected pursuant to the statute and to the by-laws of said corporation; that said corporation has never been dissolved, but has ever since continued to be and now is a body corporate, and is the plaintiff in this suit; that the members of said religious society, ever since September, 1851, have continued to hold stated divine service; and the plaintiff has taken into its possession and now holds in trust for said society, certain real and personal property acquired by it for that purpose, including a meeting-house, &c. The complaint also alleges, that in July, 1857, the defendants, for the purpose of laying a foundation to usurp and interfere with the name and interests of the plaintiff, and with the estate held by the plaintiff in trust for said religious society, fraudulently caused to be recorded in the office of the clerk of the board of supervisors of said county, a false certificate, whereby, after reciting that the German Evangelical Congregation in New Elm, incorporated on the 8th of September, 1851, had been dissolved less than six years before, and that the remaining members were desirous of incorporating said congregation again, under the statute, it was declared that in pursuance of due notice given to the members of said congregation on three successive Sabbaths, an election was held on the 27th of July, 1857, for three trustees, for the purpose of incorporating said congregation, and that at such election the defendants were duly elected

January Term,
1861.

THE TRUSTEES,
&c., OF NEW
ELM,
v.
HOESSLI et al.

trustees to take charge of the estate and property belonging to said congregation, and that it was resolved that said trustees and their successors in office should forever be known as "The Trustees of the German Evangelical Congregation in New Elm." The complaint alleges that the defendants, at the time of said pretended election, if members of any religious society at all, were members of one already duly incorporated; that none of the defendants were at the time trustees of said German Evangelical Congregation of New Elm; that no public notice of such election was ever given at the usual place of meeting of said congregation, or at any place where the members thereof statedly attended for divine worship, nor was such election held at any such place of meeting, but if held at all, was held at some other place, without the knowledge of a majority of the members of said congregation, and without the knowledge of the trustees of said congregation, or of its officers. The complaint also alleges that the defendants falsely claim to be "The Trustees of the German Evangelical Congregation of New Elm," and acting under that name have often interfered with the property held by the plaintiff in trust as aforesaid, and now threaten to take into their custody all the temporalities of said religious society, and transact all affairs relative thereto. Prayer, that the defendants might be forever restrained from using the aforesaid corporate name, and from in any manner usurping or interfering with any of the rights, property, &c., of the plaintiff, or with the temporalities of said religious society.

The defendants demurred to the complaint, and from an order overruling their demurrer, appealed. The grounds of demurrer are stated in the opinion of the court.

*Weisbrod & Finch*, for appellants, contended that the plaintiffs' remedy was under sec. 6 or sec. 14 of chap. 160, R. S.; that a suit under either of those sections must be brought in the name of the state, and by the attorney general, unless he refused to act, in which case it might be brought by a private person; and that a *quo warranto* was the proper proceeding to determine whether the defendants possessed the corporate powers claimed by them, as alleged in the com-

plaint. 2 Kent's Comm., 313; 3 John., 134; *Slee vs. Bloom,*
5 Johns. Ch. R., 380; *Attorney General vs. Earl of Clarendon,*
17 Vesey, 491; *Att'y Gen'l vs. Utica Ins. Co.,* 2 Johns. Ch.
R., 376, 378, 388; *The King vs. Whitwell,* 5 Term R., 85;
*Commonwealth vs. Arrison,* 15 Serg. & Rawle, 127; *Comm.*
*vs. Woelper,* 3 id., 29; *Comm. vs. Cain,* 5 id., 510. The
plaintiff, having thus a complete remedy at law, cannot
maintain a suit in equity for an injunction. 1 Story's Eq.
Jur., 7th Ed., § 33; *Shephard vs. Genung,* 5 Wis., 397;
*Att'y Gen'l vs. Utica Ins. Co.,* 2 Johns. Ch. R., 376, 390–1.
If this case should come to an issue of fact, the question
of dissolution, by forfeiture or some other cause, would ne-
cessarily arise (5 John. Ch. R., 379); but a court of chancery
never deals with the question of forfeiture. 2 Kent's
Comm., 314, and cases there cited. 2. The circuit court
can grant an injunction only where the complaint is filed by
the attorney general. 3. The complaint does not show that
the plaintiff is a corporation. The provisions of sec. 4, chap.
148, R. S., do not apply to religious corporations. See sec.
38, same chapter. The general averment in the complaint
that the plaintiff is a corporation, is controlled by the specific
facts alleged to show compliance with the statute (chap. 47,
R. S., 1849) under which it claims to have become incorpo-
rated. 4 Wis., 112. If the complaint does not contain the
necessary averments to meet the requirements of that stat-
ute, the defect may be taken advantage of by demurrer. 7
Wis., 282. But there is no allegation that the members of
the Germ. Ev. Cong. who elected trustees in 1851, were "*of*
*full age;*" nor that the trustees then elected were classified
by lot. See sections 1 and 12 of the statute.

*Bouck & Edmonds,* for respondents:

1. It was not necessary to state in the complaint that the
electors of the first trustees, in 1851, were of full age. The
presumption is always against minority. Whoever seeks to
take advantage of infancy, as a defense, whether it be the
infant himself or some other person, must aver and prove
it. 1 Phil. Ev. (4th Am. Ed.), 83; 1 Greenl. Ev., § 81; 2
id., § 362; *Borthwick vs. Carruthers,* 1 T. R., 648; *Hartley vs.*
*Wharton,* 11 A. & E., 934; *Lessee of Battin vs. Bigelow,* Pe-

January Term,
1861.

THE TRUSTEES,
&c., OF NEW
ELM,
v.
HOESSLI et al.

ters C. C. R., 452; *Leader vs. Bary*, 1 Esp., 353; *Jenne vs. Ward*, 2 Stark., 326.　2. The classification of the trustees is not required to be made before the filing of the certificate, and therefore does not affect the original incorporation.　And it is not necessary to aver all the subsequent proceedings of the corporation, but a general allegation showing continued user, and denying a dissolution, is all that was required.　3. Upon the facts stated in the complaint, the defendants are mere pretenders, using the name and seeking by fraud to get possession of the temporalities of a religious society.　Their interference with the property of the society in the possession of the plaintiff, may be restrained by injunction.　*Beatty vs. Kurtz*, 2 Peters, 566, 584; Story's Eq. Jur., §§ 925 et seq.

The defendants are at best in the situation of persons acting under a void charter, in which case neither *scire facias* nor *quo warranto* is necessary, for a void charter affords no protection to those acting under it.　Ang. & A. on Corp., § 778 and case there cited; *Sackville College Case*, Ld. Raymond, 178; *Butler's Case*, 2 Vent., 344; *Rex vs. Pasmore*, 3 T. R., 244; 2 id., 556; *The Pres. &c., of Kish. & Cent. Turnp. R. Co. vs. McConaby*, 16 Serg. & R., 145; *Earl of Rutland's Case*, 8 Coke, 55, a.; *Rex vs. Kemp*, 12 Mod., 78.　4. The name of a corporation is a part of its franchises.　Ang. & A. on Corp., §§ 99, et seq.; Grant on Corp., pp. 13 and 50.　Where a religious society has incorporated itself, choosing its own corporate name, under our statute, its only remedy against other persons incorporating or pretending to incorporate themselves under the same name, is by injunction.　11 Serg. & R., 73, 74; *Wardens &c. vs. Hall*, 22 Conn., 125; *Minot vs. Curtis*, 7 Mass., 441; *Newburgh T. Co. vs. Miller*, 5 Johns. Ch. R., 112; Story's Eq. Jur., §§ 927, 951, and cases there cited.

January 15.　　*By the Court*, COLE, J.　We are of the opinion that the order overruling the demurrer to the complaint in this case, must be affirmed.　Objections are taken to the complaint on several grounds.　First, it is insisted that there is a defect of parties plaintiff, and that the state should be made a party. But we think this objection is clearly untenable.　The ac-

tion is brought by the trustees of a religious society, which
was incorporated under the provisions of chap. 47, R. S.,
1849, for the purpose of restraining the appellants from in-
terfering with the rights, estate and temporalities of the
church and society, and to prevent them from using the
name of the corporation. Thus the gravamen of the com-
plaint, or ground of action, appears to be a trespass upon
the rights and property of a religious society. Now it is
very clear that in a controversy of this character, the state,
as such, can have no direct interest. Assuming, as we must
upon this demurrer, that the allegations of the complaint are
true, still the state has no further interest in the matters in
controversy than it would have in an ordinary trespass upon
the property of a religious society. Again, it is objected that
the plaintiff has no legal capacity to sue, because it appears
from the complaint that the plaintiff is not a corporation ; and
that it does not appear therefrom that the attorney general
has refused to act. The first branch of this objection is cer-
tainly unfounded, since it is alleged in the complaint, with all
necessary and reasonable certainty, that the religious society
was duly incorporated under the statute; and that the re-
spondents were elected trustees of the same. This would
give the trustees a right to bring a suit in their corporate
name for an injury to the property. (See chap. 47, R. S.,
1849, and chap. 66, R. S. 1858, secs. 7 and 8). The other
branch of the objection seems to imply that the suit is
brought for the purpose of dissolving a corporation having
an actual existence, or to oust certain parties from acting as
a corporation, or to test the fact of their incorporation. We
have already stated that the object of the suit appeared to be
to restrain the appellants from interfering with the posses-
sion and enjoyment of the temporalities of the church and
society, upon the ground that they had no right whatever so
to do, and that we could not see that the state or attorney
general had any particular interest in the litigation. The
proceeding is not analogous to an information in the nature of
a *quo warranto*. This is very apparent if the allegations of
the complaint are considered. It is quite probable that the
question whether the religious society has been dissolved, or

VOL. XIII—23

January Term, 1861.

THE TRUSTEES, &c., OF NEW ELM, v. HOESSLI et al.

January Term, 1861.

THE TRUSTEES, &c., OF NEW ELM,
v.
HOESSLI et al.

if not dissolved, whether the appellants or respondents are the lawfully chosen trustees thereof, and as such entitled to take into their possession and under their control the temporalities of the church and society, may come up for judicial inquiry on the trial; but no such question can possibly now arise in view of the allegations of the complaint. The next, and, as we consider, the chief objection to the complaint is, that it does not state facts sufficient to constitute a cause of action. Upon this point we must say that the case is not entirely free from difficulty. But the difficulty does not grow out of the fact that the code has abolished all distinctions between actions at law and suits in equity, or abridged the power of the courts of this state to grant equitable relief in a proper case—a proposition contended for on the brief of the counsel for the appellants. For although the writ of injunction is abolished by chapter 129, R. S., still when the complaint lays a foundation for an injunction, it will be granted by the court, either as a final judgment in the action or as a provisional remedy, in all cases where it would be allowed under the old chancery practice. Sec. 2, chap. 129, which provides, that when "it appears from the complaint that the plaintiff is entitled to the relief demanded, and that such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce an injury to the plaintiff," &c., would seem rather to enlarge than restrict the power of the court over the remedy by injunction. But we are further of the opinion that a court of chancery would grant an injunction under the facts stated in the complaint. The general rule undoubtedly is, that in cases of private trespass an injunction would not be granted, for the reason that the aggrieved party had an adequate common law remedy by action, where proper damages could be assessed by a jury. In ordinary cases this was found to be sufficient for the protection of property. "But in cases of a peculiar nature, where the mischief was irremediable, which damages could not compensate, or where the injury reached to the very substance and value of the estate, and went to the destruction of it in the character in which it was

enjoyed," then courts of equity would grant an injunction to January Term, 1861. prevent the injury complained of. *Beatty et al. vs. Kurtz*, 2 Peters, 566; *Jerome vs. Ross*, 7 J. C. R., 314; *Varick vs. the Mayor &c., of the city of New York*, 4 id., 53. Now it must be admitted that the circumstances of this case are so special, the nature and use of the property itself are so peculiar, that an ordinary action of trespass would furnish no adequate compensation for an injury to the possession. For would any mere pecuniary damages furnish any compensation to a religious society for repeated and constant acts of trespass upon its property and temporalities? Most clearly not. The entire value of such property consists in its free and undisturbed use and enjoyment for religious worship. Considering, therefore, the nature of this property, the use and purpose to which it is dedicated, the mischief arising from acts of trespass upon it, and the insufficiency of the ordinary legal remedies, we must say that, in our opinion, the complaint states a proper case for an injunction.

The order of the circuit court overruling the demurrer, is affirmed.