## JOHN A. BLONDELL ET AL. *vs.* THE CONSOLIDATED GAS COMPANY OF BALTIMORE CITY.

*Gas Companies—Control of Meter—Placing Governors on Meters—Requiring Removal of Governors — Injunction — Bailment — Laches— Parties.*

Persons who use gas supplied by a company, the amount used being measured by meter placed on the premises of the consumer, but owned by the Gas Company, are not entitled to put upon such meter or its immediate connections a device called a governor for the purpose of regulating the pressure of the gas.

A mandatory injunction will be granted requiring the parties so placing governors on meters to remove the same, as well as an injunction to restrain them from such interference with the meters in future.

It will not be presumed that the consumers of gas will prevent the defendants, who placed the governors on the meters, from removing them in pursuance of a decree of Court.

The consumer of gas has a right to put a governor to regulate the pressure, upon any part of the pipes belonging to him, under reasonable regulations to be made by the parties under the direction of the Court.

When a Gas Company, in pursuance of a duty imposed by statute, places in the house of a consumer of its gas, a meter, for the purpose of registering the supply, the meter being the property of the company and subject to its control, there is no bailment of the same to the consumer so as to authorize him to put a governor thereon or to use it for any other purpose.

An injunction will be granted to restrain the placing of governors upon gas meters owned by the Gas Company, but located on the premises of consumers, and to require those already so placed to be removed, because of the peculiar nature of the property and the danger caused by interference with it, and because several thousand of such meters being in use, a multiplicity of actions at law would be necessary to obtain relief.

When property, either movable or immovable, has been put within a party's control to be used in a particular manner, equity will enjoin the use of it in any other manner.

In a suit to enjoin the proprietors of certain governors from placing the same on gas meters owned by a Gas Company, located in the houses of consumers of gas, and to remove governors already so placed, the consumers are not necessary parties.

The fact that a Gas Company made no objection for some years to the placing of governors upon its meters in the houses of consumers of gas, does not constitute such *laches* and acquiescence as estops it from requiring their removal.

Cross-appeals from a decree of the Circuit Court No. 2, of Baltimore City (SHARP, J.), enjoining the appellants from placing any governors on gas meters and refusing to grant a mandatory injunction requiring them to remove governors already placed on gas meters.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*J. Southgate Lemmon* and *C. Baker Clotworthy*, for Blondell *et al.*

The purpose and end of the plaintiff is to manufacture illuminating gas and sell the gas to its customers, the consumers. The meter is but a tool of the trade, like a pound-

weight or a quart-cup, used to measure the sale of the pro-
duct to the consumers.   Its only purpose and office is to
measure the quantity of the plaintiff's product drawn by the
consumer, and when this is done its purpose has been ful-
filled.   The plaintiff, tendering gas to a consumer, must by
law provide a measure for gas delivered and accepted—the
meter.   But this is only part; the law on the whole requires
that this company, to which it has given valuable and ex-
clusive public rights, shall furnish all desiring it one thous-
and cubic feet of gas, and the use of a meter to measure it,
for $1.25.   The meter is set in a place convenient to the
consumer, and he draws through it as many thousand feet
of gas as he may desire, paying therefor as stipulated by
law.   *Is not, therefore, the meter hired to the consumer for a
valuable consideration?   And being so hired, does it not con-
stitute a bailment?*   Is it any the less a bailment for hire
because the law does not divide the charge, and say " so
much for gas, so much for use of meter?"   If I go to a
liveryman and say, " I will take your horse at $25.00 per
month, but you must let me have a buggy with it."   Is the
buggy any the less bailed for hire because the money pay-
ment was designated as for the horse alone?   And so, the
consumer says, "I will take your gas at $1.25 per thous-
and, but you must let me have a meter to measure it with."
*We, therefore, submit that when a meter is placed in a ware-
house or dwelling, the Gas Company becomes bailor and the
consumer bailee of the device, and their respective rights,
duties and liabilities, in regard thereto, are fixed and deter-
mined by the well-settled principles of the law of bailments.*
Redfield states the principle of law to be: " When hirer of
anything stipulates to retain it for a particular time, or for
the performance of *a particular business*, he will be entitled
to use it in the same manner as he would his own under the
same circumstances, since he pays the price of the hiring
for the purchase, as it were, for the property in the thing
for the time or the occasion, and the fair and natural impli-

cation is that he will expect to use it as his own.    *Redfield on Carriers and Other Bailments*, sec. 682.

The natural use of a meter is to register the gas *desired* by the consumer, no more.    If by reason of pressure, *natural or artificial*, more gas is forced through the meter than the consumer desires, the meter ceases to properly perform the function for which it was intended.    It ceases to be a measure of the quantity of gas desired by the consumer and becomes a register of the amount of gas the appellee *wishes to force* on its customers at every opportunity. The flow of gas varies very greatly, not only by reason of the pressure *applied by the appellee at the works*, but by reason of the different altitudes of the city.    The importance of this variation, *forced and natural*, is well explained by an experienced gas engineer.    On the effect of altitude he testifies that the rule for coal gas was, that the pressure increased one-tenth of an inch with each ten feet of altitude, but that with water gas, such as the appellee furnishes, the increase would not be quite so much.    Thus a consumer, whose house was fifty feet above the level of the gas works, would have one-half inch more pressure than he needed, and if the Gas Company increased the pressure at the works one inch, those on the low levels would pay for one inch more than needed, and those on the higher levels one-tenth of an inch additional still for every ten feet they happened to be above the gas works.

The Gas Company's engineer states that the company must maintain a pressure *sufficient for the lowest level of the city*, and that this pressure is greater than needed on the higher levels ; and, again, that *the pressure is fixed* to suit the greatest use during the early hours of the evening, with the result that as this use is withdrawn, the pressure is greater than necessary for those continuing to consume. Mr. Hambleton concludes this confession by saying : " We know that a governor can be used to good purpose, and we do not deny that a governor will keep the gas from blowing.    *It is a remedy which the people have in their own*

*hands.* It is very difficult for us to try to meet it at our works. *It is something we cannot meet at our works."* Thus we have the chief engineer of the appellee calmly stating, in a suit brought to *restrain and prohibit the use of gas governors,* that the appellee forces more gas on its consumers than they would or can consume; and that the governor, whose use it is seeking to prohibit, is the only remedy. With such a suit pending is it not mockery for the appellee to say, as Mr. Hambleton does say, that the remedy is in the people's own hands ?

The situation that confronts the consumer is simply this : He must either pay for more gas than he uses or remedy the evil, if possible, himself. The Gas Company has confessed its inability, and by this suit expressed a strong disinclination to remedy the evil, so the consumer must look elsewhere for relief. Any encyclopædia will give him the desired information. *American Encyclo;. Chambers' Encyclo.,* vol. 5 ; *Encyclo. Britt.,* vol. 10, pages 96, 97. In the latter work, under the title of gas, "governors" are mentioned as essential, and a volumetric glycerine governor similar in principle to the governor of the appellant's is described. Governors for the purpose of controlling the pressure of gas to the needs of the consumer are not only well known to science, but the witnesses in this case confirm their practical use and value.

The location of the governor on the meter is not only the safest and most convenient, but the most serviceable to the consumer, as well as the most protective of his property. The greater the pressure of the gas the greater the liability of leakage at each and every joint in each and every house. It is desirable, therefore, to control this pressure at the first possible place in which the governor can be put, and that, of course, is on the meter. The reasons are drawn from an intimate knowledge of the location of meters and pipes in the houses of Baltimore and the requirements of a governor to secure the best service for the consumers. And so we submit *that the placing of the governor on the outlet of*

*the meter does best secure the object desired* and affords the consumer steadiness of light and facility of inspection without added pressure, and as the consumer has undoubtedly the right to the *best service* from the gas he purchases, the meter will be the point selected to attach the governor, unless *the attaching of the governor will interfere with the work of the meter as a register or injure the instrument itself.* The consumer having hired for a valuable consideration the meter as a register, the law permits him to use it as his own, provided that use does not injure it, or, as is claimed in this case, interfere with its operations as a register.

The governor being attached to the outer pipe of the meter, there is no contention that it in any way interferes with the flow of gas *into* the meter, and as by its construction it is a simple conduit, the gas after leaving the meter flows through it as it would through a simple pipe, except in so far as the arrangement of the inverted cup and valve operate to automatically control the pressure of the gas to the need of the consumer. The meter continues to register all gas passing through it exactly as it would if the governor were not attached, and *there is not a particle of evidence in this case that the governor in any way or to the slightest degree interferes with the proper registering of the gas by the meter.* Of all the witnesses examined by the appellee, not one could explain any interference with the work of the meter as a *register* by the attachment of the governor.

.   We admit that gas is a dangerous element, and that "the care and diligence" required by the law " should always vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be credited.'" *Holly* v. *Burton Gas Light Co.*, 8 Gray, 123, 131. But that the plaintiff is responsible for all damage to persons and property resulting from leaks in the meters or connections, no matter by what agency occasioned, we must strongly deny. The base of any action against the plaintiff to recover for damage occasioned by a leak must be negligence on its part,

and he who charges negligence as a ground of action must prove it. *The Nitro-Glycerine case*, 15 Wall. 537 ; *Brady's case*, 85 Md. 637. The plaintiff " must show that the defendant, by his act or by his admission, has violated some duty incumbent upon him which has caused the injury complained of." *The Nitro-Glycerine case*, 15 Wall. 537. If the plaintiff cannot show this, the Court will take the case from the jury. *Brady's case*, 85 Md. 641.

*William A. Fisher* and *Robert Ludlow Preston* (with whom were *J. Alex. Preston* and *Alex. Preston* on the brief ), for the Gas Company.

1. The Gas Company is the owner of the meters and their connections placed in the premises of its consumers, and it parts with no rights of ownership in them. It is evident that it must retain its ownership of this property ; it is an essential part of their apparatus used in their business, and the plaintiff is responsible for their care and condition.

2. There is no dispute that the defendants, in attaching the governor, necessarily change the positions of the connections. The defendants, however, deny that such changes cause any injury. What, then, is the character of damage and injury complained of? The plaintiff has proven, in great detail, injuries and damages and risks created by the acts of the defendants. Its witnesses have testified, with particulars as to time, place and circumstance, of injuries caused by the attachment of the " governor," in nearly two hundred cases.

If an explosion or fire should occur by reason of a leak at the meter or its connections upon which the governor has been superimposed, the accident itself would be apt to destroy all means by which it could be traced to the defendant, while the *prima facie* responsibility of the plaintiff would take full effect. It cannot be that anyone whose duty requires that he shall handle, through agents, a high explosive, shall be compelled to submit to the interference of others not appointed by, and not responsible for their discipline to him. The defendants have undertaken to give by their own evidence a good account of themselves and of

their capacity.    But it is the person who is responsible for
the care of the explosive, who alone must form a judgment,
even if it were capricious, of the agencies which he will
adopt.

It cannot be that a Court will listen to evidence that the
persons who, without permission, tamper with the instru-
ments by which the explosive is conveyed, will do it care-
fully.    Naturally not only the rights of the plaintiff, but the
interests of the public demand that there should be no
divided responsibility in such case.    And for much the same
reason there ought to be no balancing of the extent of in-
jury done to the plaintiff.    The evidence shows that the
placing of the governors about its connections results in
constant annoyance and in the useless consumption of the
time of its employees.    But while these circumstances are in
themselves sufficient grounds for the relief, they are subor-
dinate in the presence of the more serious apprehension of
danger.    Under circumstances, Courts of Equity will grant
relief to individuals against acts which merely disturb the
even operation of the nerves, and affect peace and comfort
of living.    And they do not require that proceedings shall
be taken in the Courts of Law, when the annoyance is con-
tinuous ; and the legal remedy must be continuous also.    If
an individual, a merchant for example, was a dealer in gun-
powder, and stored the article in a receptacle, the Court
would never for a moment tolerate the proposition that a
stranger could open and close the receptacle when he pleased,
and in the absence of the owner, no matter what reputation
for prudence he might produce.

The plaintiff has no disposition to throw obstacles in the
way of the use of the governors.    It asks merely protection
for its own fittings ; that no more shall be affixed to them,
and that those already affixed shall be removed.    There is
no hardship so far as the defendants are concerned, because
not only other witnesses, but especially Mr. Dickson, who
is the half-owner of the governors, who is an intelligent
patent lawyer, and who himself operated the governor for

some time, frankly admitted that it could be operated as well on the house-pipe, as on the meter, and that the reason for making it an incubus upon the meter is because it is more economical and convenient for the owners of the governor.

The acts of the defendants amount to a series of trespasses, continuous in character, not relievable at law at all, in fact, and theoretically only by means of such vexatious litigation as equity does not contemplate with favor. The case also is peculiar in the circumstance, that not a private right only is involved, but the prevention of a danger to life and property. Equity relieves in such cases. *Gilbert* v. *Arnold*, 30 Md. 29 ; *White* v. *Flanigain*, 1 Md. 525 ; *Blair* v. *Brady*, 64 Md. 373 ; *McCreery* v. *Sutherland*, 23 Md. 471; *Shipley* v. *Caples*, 17 Md. 182 ; *Cherry* v. *Stein*, 11 Md. 27 ; *Canal Co.* v. *Young*, 3 Md. 489; *Shipley* v. *Ritter*, 7 Md. 408 ; *Amelung* v. *Seekamp*, 9 G. & J. 468.

The defendants rely upon the proposition that the patrons of the defendants should have been joined. The defendants must regard it as a case for representation, as their patrons are eighteen hundred in number. It is a question, we presume, which could be raised only with respect to that part of the relief prayed which asks an injunction to compel the defendants to remove the governors already placed by them from the meters and its connections. The objection is evidently trifling, under the circumstances, and not entitled to the consideration of the Court. No rights of the consumer are involved. Confessedly the governor can be used with the same effect precisely on the pipes away from the meter and connections, and it is only necessary that the defendants shall meet the trifling expense of furnishing the proper support for it. Probably in all instances the consumer has paid no attention to the location of the governor, and is indifferent on the subject. The defendants are trespassers, and if the consumers had actually taken part they would be trespassers also, and it would seem to be a dangerous application of the principles as to necessary

parties, if one wrongdoer cannot be proceeded against unless all his unlawful connections are gathered in also.

FOWLER, J., delivered the opinion of the Court.

The Consolidated Gas Company of Baltimore City filed the bill in this case for an injunction to restrain the defendants, who are co-partners trading under the name of "The Mutual Gas Saving Company of Baltimore City," from interfering with or in any manner disturbing the meters, pipes and connections used by the plaintiff in distributing and supplying gas to the consumers thereof in Baltimore City and its suburbs.   As a part of the relief asked for in this bill the plaintiff also prayed for a mandatory injunction to compel the defendants to remove all their devices of every kind from said meters, pipes and connections.

The bill alleges that the plaintiff is engaged in manufacturing illuminating gas and furnishing it to residents of the city of Baltimore and its suburbs ; that in order to carry on its business it is necessary to place a meter, together with certain pipes and connections, in every house or building in which its gas is used ; that it now has about forty-five thousand meters, with their pipes and connections, in use, which it is alleged are the absolute property of the plaintiff ; that the defendants, without the consent of the plaintiff, have broken, disconnected, *tampered with* and otherwise disturbed and disarranged the plaintiff's meters, pipes and connections for the purpose of affixing a certain device called "a governor," which is used for the purpose of reducing the consumption of gas by consumers ; that the defendants have already affixed a large number of such governors to the meters of the plaintiff and are from time to time increasing the number ; that illuminating gas being an agent dangerous to life, health and property, it is necessary to exercise the greatest care in its use ; that in order to prevent injury and damage the plaintiff is required to use constant watchfulness and the utmost care to keep its meters, &c., in good repair, and that therefore it ought to

have exclusive care of them, because it alone is responsible for the safety and protection of the consumers of its gas; that the unlawful interference of the defendants with the plaintiff's meters, &c., has occasioned them loss and risk, and will continue to do so; that the action of the defendants in the respect mentioned has injured and destroyed the plaintiff's pipes and connections, and has caused leaks through which gas escaped to the great risk of life, health and property; that the actions of the defendants are liable to cause fires and explosions; that the injury to said meters and pipes has been occasioned by the incompetent and careless agents of the defendants, who disturb them, frequently at times unknown to the plaintiff; and that it is apprehensive it may be subjected to suits for damages on account of injuries to health and property, and of death caused by the unwarranted and careless acts of these defendants and their agents; and that it has no adequate remedy at law.

The defendants demurred to the bill upon the following grounds:

1. That there is nothing charged in the bill that the defendants did not have a legal and equitable right to do.

2. That the law affords the plaintiff an adequate remedy.

3. That the bill makes out only a simple case of trespass and negligence for which the law gives ample remedies.

4. That the jurisdiction of a Court of Equity cannot be successfully invoked by the allegation of apprehended loss to be caused by persons who are not in its employment or under its control.

5. That no facts are stated in the bill to show the defendants are financially irresponsible.

6. Want of proper parties.

7. Because the scope of the bill is to destroy the right of citizens to contract for mutual advantage and to allow a monopoly to force gas upon consumers with a pressure beyond its needs.

This demurrer was overruled, and the defendants there-

upon answered.    In their answer they admit that the plaintiff is required by law to furnish consumers of gas with meters to measure the gas consumed, but deny that the pipes and connections of said meters are the plaintiff's property, and they allege that they have placed a large number of their "governors" upon plaintiff's meters with the consent of the consumers; but they deny that they have ever injured or broken any of the pipes or meters of the plaintiff; they deny the right of plaintiff to have sole charge of the meters, pipes and connections or that they have injured the plaintiff's property, and they aver an adequate remedy at law, and rely upon a want of proper parties.    Without further rehearsing the allegations of the answer it is sufficient to say that it denies all the substantial allegations of the bill except the one relating to the ownership by the plaintiff of the *meters*, which appears not to have been *specifically* denied in the answer, although the defendant contends that the plaintiff's claim of ownership of the meters is not sustained by the evidence.

Testimony was taken by both sides, the case was argued, and the learned Judge below passed the decree of the 30th December, 1898, granting an injunction to restrain and prohibit the defendants from further interfering with plaintiff's meters and connections, but refusing a mandatory injunction to compel the removal of the "governors" now in use.

From this decree both parties have appealed; the plaintiff from so much of the decree as refused the mandatory injunction for the removal of the "governors," and the defendant from that part thereof which enjoined them from the alleged interference with plaintiff's meters and other property.

Having thus fully stated the case before us, we will proceed to consider the questions of law and fact presented by the two appeals in this record :

(1) In the *first place*, it may be observed that there is no claim attempted to be set up that the consumer has not a

right to use such a device as is shown to have been used in this case and called a governor, or any other device which in his opinion will answer the purpose better; but the contention of the plaintiff is that in fact the meter and its connections are its property, and that whether this be so or not, the law gives to it the sole control and management of such meter and connections, and that neither the consumer nor any one with or without the consumer's consent, has the right to disturb or interfere with the meter or its connections, for the purpose of connecting therewith a governor, or, for any other purpose without the consent of the plaintiff.    This contention, we think, is fully sustained by the evidence and by the Act of 1876, chapter 356, entitled "An Act to regulate gas meters in the city of Baltimore." By this Act the plaintiff is required to place on the premises of every consumer of gas " a correct apparatus or meter for registering the consumption of the same," and it is made the duty of the plaintiff to see that the meter is kept in proper working order.    To place the meter where the law requires it to be placed, the plaintiff must either manufacture or purchase them, and the evidence is that they are purchased at an average price of $22 or $23 apiece.    When thus placed as required, the meter remains in the house of the consumer so long as he continues to use gas, subject to the control and inspection of the plaintiff, and when the consumer ceases to be a consumer of gas, the meter and its connections, consisting of two lead pipes, are removed and taken again into the possession of the owner.    These pipes are, we think, a necessary part of the meter.    Without them it could not be connected with the street or supply-pipe on the one hand, or the consumer's pipe on the other, and it is shown by the evidence that they are furnished or supplied by the plaintiff in order to make the necessary connections.    Some effort was made to show that the consumer paid for, and therefore owns these pipes, but such a view is unsupported by the testimony, which not only shows that they are " placed "

on the consumer's premises along with the meter, but they
are also removed with it.   We think, therefore, it can
hardly be contended with much show of reason that either
the meter or its connections are not the property of the
plaintiff.  But whether this be so or not, it is very apparent
from the testimony, and, indeed, is well-known independent
of the testimony, that, as alleged in the bill, illuminating gas
is an agent dangerous to life, health, and to property.
Therefore, inasmuch as the law ruquires the plaintiff to
keep the apparatus in proper working order, it will hold the
plaintiff responsible for damage to property or loss of life,
caused by a failure on its part to perform its duty.   Along
with this legal responsibility must necessarily be conceded
to the plaintiff sole control—for it would plainly be as un-
just as it would be absurd to impose such a responsibility,
and withhold the right of protecting itself from loss caused
by interference on the part of others.   If, as we have said,
the meter and its connections are the property of the plain-
tiff, and if, as the law requires, it is placed in the consu-
mer's house for the purpose, and for the sole purpose, of
"registering the consumption of gas," we are unable to
understand upon what theory the defendants can success-
fully claim the right to use this apparatus of the plaintiff
for another and entirely different purpose.   The meter is a
device for measuring the consumption of gas, which the law
requires to be used by the plaintiff as a part of its system,
while the "governor," which the defendant claims the
right to affix thereto, is a device designed for the purpose
of regulating the pressure of the gas after it passes through
the meter.   Now it seems to us that the large mass of testi-
mony contained in the record showing, on the one hand,
that the affixing of the governor was, and on the other
hand that it was not injurious to the meter and its connec-
tions, is entirely beside the question.   For whether the al-
leged acts were or were not productive of injury, they were
in the eye of the law trespasses, if, as we have said, the
tmeers are the plaintiff's property, and if the acts were un-

authorized, there is a legal injury for which the plaintiff could recover, at least, nominal damages; (*B. & O. R. R. v. Boyd*, 67 Md. 32; *Poe on Pl.*, sec. 247), and the continuation of which would be enjoined by a Court of Equity.

2. But the argument of the defendant is, that, assuming for the sake of. the argument the meter and connections to be the property of the plaintiff, yet there is a bailment of some kind in relation to them, and that being so, the consumer has the right to use them for any reasonable purpose—contending that the affixing of the governor to them is such a reasonable use.

It is apparent from what we have already said, that the apparatus in question is not *delivered* to the consumer for any purpose whatever. It is true, it is "placed," as the law requires it to be placed, temporarily in his house for the *purpose of measuring the gas consumed*, and at the same time to convey the gas from the supply-pipe of plaintiff to the pipe of the consumer. It is while thus in use, connected with and forms a part of the means by which the plaintiff sells and delivers the gas to the consumer, and while so in use cannot, in our opinion, be fairly considered as a separate chattel subject to a bailment of any kind. In order to effect a bailment there must be a delivery either real or constructive. Here there is neither. *Hale on Bailment & C.*, 12. But surely, if it be conceded that because the apparatus is placed in the house of the consumer, he thereby becomes a bailee, he would be bonnd to respect the terms of the bailment provided by the law under which it is created, namely, that it is to be used as a measure for the consumption of gas under the care and control of the plaintiff. But, being of opinion that under the peculiar facts of this case there is no room for the application of the law relating to bailments, we will not further consider this contention of the defendant.

3. Again, conceding *ex gratia* the contention of the plaintiff that the meter and connections are its property, the defendants urge that the alleged injuries and interferences

amount only to trespasses for which a Court of law affords ample remedy. But we think the state of facts before us in this record shows that the alleged trespasses are not only continuous, and that therefore a Court of Equity will enjoin them, but the allegations of the bill, and the testimony as well, show that the property of the plaintiff is of a peculiar nature, interference with which leads to danger to life and property. Under these circumstances a Court of Equity will not hesitate to exercise its jurisdiction. *White* v. *Flanagan*, 1 Md. 525; *Gilbert* v. *Arnold*, 30 Md. 29; *McCreary* v. *Southerland*, 23 Md. 471; 2 *Waterman on Trespass*, sec. 1126; *DeMattos* v. *Gibson*, 4 DeG. & J. 276. In the case last cited it was held that where property either movable or immovable is disposed of to be used in a particular manner, equity will enjoin its use in any other manner, and in *Trustees, &c.*, v. *Hoesli*, 13 Wis. 354, the language used by the Court is particularly applicable here: " The circumstances of this case are so special, and the nature and use of the property itself so peculiar, that an ordinary action of trespass would furnish no adequate compensation." But a Court of Equity will afford the relief here asked for upon the ground of preventing a multiplicity of suits. According to the concession, there have been thousands of those trespasses committed, and it is alleged and shown they will continue so long as the defendants are allowed to sell their governors and affix them to the meters.

4. The next contention of the defendant is based upon an alleged want of proper parties. The defendants allege that the trespasses complained of were committed with the consent of the consumers—and that they should, therefore, be joined in this suit. But even in a Court of Law it is not necessary to join in an action of trespass principal or agent or joint trespassers. The agent and his employer, or the joint trespassers, may be sued separately or jointly at the election of the party injured. *Coal Co.* v. *McCulloh*, 59 Md. 403. The consumers, however, are not really neces-

sary parties. We are of opinion that the defendants really represent the whole controversy. For they placed the governors on the meters, and unless the plaintiffs have been guilty of *laches*, the defendants and they alone will be required to undo what they have illegally done.

5. And this brings us to the consideration of the defence of *laches*.

The grounds upon which the defendants rely to establish this defence, are, first, because the plaintiff through its former secretary consented to the use of the meters and connections.

And, second, long delay in taking steps to prevent the defendants from placing their governors.

In regard to the first, we need only say that in our opinion it is not supported by the testimony. The then secretary of the Gas Company informed the witness, Mr. Dickson, who called to get his views in regard to the introduction of governors in Baltimore, and the secretary said in substance what the plaintiff now says, that he had no objection to offer—" we would not do anything against you if we could, and we could not if we would ;" that the matter of placing governors on has been decided, that is, that it was entirely in the province of the consumer ; if the consumer wanted a governor that they could not prevent them from having one. There is nothing in this testimony or in any other testimony we have found in the record which shows or tends to show that there was any consent given to use the meters and its connections in the manner now complained of. Indeed the inference from all the testimony is the other way.

Whether the defence of *laches* should be allowed to prevail depends upon the circumstances of each case in which it is set up. We have already said that the dictates of ordinary justice require that the plaintiff should have exclusive control of its meters and its connections. And this is so, as already pointed out, not only because of the rights of the plaintiff, but in addition it is so because in our opinion, and the evidence shows it, a double control increases the danger

to the lives and property of the consumers, and in case of
death or injury to property would increase the difficulty of
discovering which of the two is liable. Each would attempt
to place responsibility on the other. The difficulties which
lie in the path of recovery while the plaintiff alone is in con-
trol and when there is no governor on which to place the
blame, are sufficiently great without adding to them. But
it appears also that the use of governors on the meters is a
*growing one.* It may well be that for a long time when the
evil complained of had not reached the great proportions
to which it has now grown, the plaintiff may have preferred
to endure it, rather than resist it. But surely such a con-
dition should not be allowed to be used in a Court of
Equity as ground to prevent the exercise of its jurisdiction,
when it is apparent that not only the plaintiff, but a large.
portion of the public are entitled to protection from an evil,
which, if it be an evil, is daily growing larger. In our
opinion the mere delay or acquiescence of the plaintiff, in the
absence of any evidence showing that it induced in any way
the defendants to place governors on the meters, is no answer
to the bill, under all the circumstances of this case.

6. What we have already said, in regard to the questions
of fact and law presented by the appeal of the defendant,
from the part of the decree granting the restraining injunc-
tion, renders it necessary to say but little in regard to the
appeal of the plaintiff from that part of the decree which
refused the mandatory injunction requiring the defendants
to remove their governors from the meters. For if we are
correct in what we have said, namely, that the plaintiffs are
legally entitled to the sole control of the metres and con-
nections, and if the governors were illegally placed on the
meters without the consent of the plaintiffs and without any
inducements on the part of the latter, being free from *laches,*
it follows necessarily that the governors should be removed.
Who should remove them? Undoubtedly the defendants
who placed them there. It is no answer to this require-
ment of the decree that the defendants are not in control of

the premises of the consumers ; the consumers gave their consent, as alleged, to placing the governors, and it is not to be presumed that they will attempt to prevent the defendants from performing a plain duty imposed on them by the decree—or put themselves in the position of resisting a valid decree of a Court of competent jurisdiction.   When such a condition arises it will be time enough to consider the questions it may present.

7.  In conclusion, we think it proper to consider some of the suggestions which have been made to the form of the decree.

·If the meter and its connections belong to the plaintiff, it is equally clear that the iron pipe which carries the gas from lead pipe or meter connection of the plaintiff is the property of the consumer or of the owner of the house, and we think it is clear he is at liberty to place the governor on any part of that pipe.   And if he should determine to use the end of his iron pipe nearest to the meter as the point at which he will place the governor, we are of opinion he should be allowed to do so, under such reasonable regulations as may be made by the Governor Company and the Gas Company.   'There can, it seems to us, be no difficulty in making such regulations as should be satisfactory to each party.  It appears·by the testimony that if the governor is not allowed to be placed on the meter nor at the end of pipe connecting with the house pipe, the latter would have to be cut to put it on.   Now, inasmuch as it also appears from the testimony that the plaintiff does not claim to have the absolute right ·in all cases to connect its lead-pipe with the house-pipe, but leaves that to the consumer and requires him to do it, it would seem to be going very far to say that under *no circumstances* shall the consumer or his agent make that connection.   ·We think that having the right, as we have said, to use the end of his iron pipe which we have indicated, as the place where he may put the governor, it is the duty of the parties interested to make reasonable rules

as to the manner in which, and by whom the work is to be done.

In this respect, therefore, the decree should be so modified that the necessary connection may be made under such reasonable regulations as the plaintiffs and defendants shall agree upon ; the Court retaining control of this case to see that this be done.

Inasmuch as we have said that in our opinion the "governors" now on the meters of the plaintiff must be removed, it is proper that we should also say that this work of removal, as well as the making of the new connection, if the governors shall be placed on the end of the consumer's pipe nearest the meter, should be done according to such rules and regulations as shall be adopted by the parties.

> *Affirmed in part and reversed in part, and remanded, &c.   Each party to pay its own costs.*

(Decided June 22nd, 1899).