January 9, 1906.

———————O———————

## No. 3782.

### Court of Appeal, Parish of Orleans.

### LAZARE LEVY & CO., vs. THOMAS MADDEN.

1. Art. 2700 C. C. deals exclusively with repairs, necessitated by unforeseen events or by decay, which the lessor is bound to make; whereas Art 2695 C. C. concerns reconstructions rendered imperative by reason of inherent defects, of the thing leased, to such an extent as may prevent its being used.

2. In the former case the lessee, if deprived of the use, either of the whole, or of a part, of the leased premises whilst the repairs are in progress, must submit thereto and is entitled only to a diminution of the rent in proportion to the time during which the repairs have continued, if it exceeds one month, and to the parts of the tenements to the use of which the lessee has thereby been deprived.

3. In the latter case, Art. 2695 C. C., the lessee is not obliged to submit to the reconstruction, but may have his action ex conducto; in which event he may also be indemnified for all loss which results as a consequence of the vices and defects of the thing leased.

129

Appeal from Civil District Court, Division "E."

Bernard Titche, for Plaintiff and Appellee.

Zengel, Thomas & Suthon, for Defendant and Appellant.

MOORE, J. This was a suit by lessees to recover of their lessor a diminution of rent because of their deprivation of the use of a portion of the leased property during the period when the property was undergoing repairs, and also for resulting damages.

It appears that pending the lease of a certain store building which was occupied by the lessees as wholesale grocers and liquor dealers, one of the party walls of the building became so decayed as to render it unsafe; whereupon, with the consent of the lessees, the lessor undertook its demolition and the erection of a new wall in its stead. The process of demolition began on the 21st day of May 1903 and by the 7th July, 1903, the new wall was built and the entire work completed.

The work was performed carefully, skillfully and expeditiously and in every manner tending to cause the least possible inconvenience to the lessees, but, it being necessary to facilitate the work, the builders were compelled to use, and did use and employ, the floor space of each story of the building to the extent of from 3 to 5 feet on the side abutting this party wall, and consequently, and to this extent only,—estimated at something less than one-fifth of the entire floor space of the building—were the lessees deprived of the use thereof during the progress of the work. To remove their stock of goods beyond this space the lessees incurred an expense of $15.00. The removal of the old wall, and temporary strutting or shoving, argumented the rate of their insurance premium to the additional sum of $60.00. Apprehensive least the shore wall might not be sufficient protection against thieves, the lessees employed a special watchman to remain in the building at night at a cost of $130.00. Dust and sand, during the course of the work, settled on the lessees goods and damaged them to the extent of from $20.00 to $25.00.

The suit was to recover these items of damages, as well as to

secure a diminution of the rent proportionate to the part of the leased property of the use of which the lessees were deprived during the repairs.

The answer admits the right to claim a diminution of the rent, which the defendant fixes at the sum of $75.00, but denies plaintiff's right to recover damages in a case of this character, even if the damages alleged were suffered, which is denied.

There was judgment in favor of the plaintiffs for $170.00 being for $75.00 diminution of rent; $60.00 increased insurance premiums paid; $15.00 expense of removal of goods; and $20.00 damage to goods by dust and sand.

From this Judgment the defendant appeals.

There is no dispute about the facts in the case, the sole question being whether a lessee in cases of this character is entitled under the law, to recover not only a diminution of the rent, but also such damages as he may have sustained by the repairs, notwithstanding these damages followed as a natural and legitimate consequence of the character of the repairs and did not arise from any *fault* whatsoever of the lessor.

The work which the lessor in the instant cause undertook, and accomplished, was of a character denominated by the law as "repairs;" the building of a new wall being rendered necessary by reason of the decay of the old wall. It was in no sense a *construction* necessitated by the "vices and defects of the thing leased which may prevent it being used," C. C. 2995.

In such case the right of the parties are governed by Art. 2700 C. C., which reads: as follows

> "If, during the continuance of the lease the thing leased should be in want of repairs, and if those repairs cannot be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be deprived either totally or in part, of the thing leased to him during the making of the repairs. But in case such repairs should continue for a time longer than one month, the price of the rent shall be lessened in proportion to the time during which the repairs have continued, and to the parts of the tenement

131

of the use of which the lessee has thereby been deprived.

"And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house, or the room, and take another house, while that which he had leased was repairing."

This article, it will be perceived, limits the lessee's measure of relief to a diminution of the rent in proportion to the time during which the repairs continue, and to the parts of the tenement to the use of whch the lessee has thereby been deprived; provided the repairs continue for a longer time than one month. Whatever be the inconvenience he undergoes by these repairs, the lessee must bear them; however long the work of repairing may necessarily be in progress he must submit to it, and *no* damage is caused by the fault of the lessor, in which case the lessee's right of recovery is recognized by the general law which finds legislature expression to the effect that "every act whatsoever of man that causes damage to another obliges him by whose fault it happened to repair it." C.C. 2315, can be recovered under this article.

That this consequence follows from the provisions of Art. 3700 C.C., is conceded by the learned counsel for the plaintiffs, but his contention is that this article is kindred to and, therefore, must be read and understood in connection with Art. 2695. C.C., which contains a provision for the lessee's indemnification by the lessor for any loss occasioned to the former.

This article is to the effect that:

"The lessor guarantees the lessee against all the vices and defects of the thing which may prevent its being used, even in case it should appear he knew nothing of the existence of such vices and defects at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

It will be seen at a glance that this article contemplates the existence of conditions and circumstances entirely different and distinct from those comprehended by Art. 2700.

This latter article deals exclusively with *repairs,* necessitated by unforseen events or by decay, which the lessor is bound to make; whereas the former article, 2695, concerns *reconstructions* rendered imperative by reason of inherent defects of the building to such an extent as may prevent its being used.

In the former case the lessee is deprived, *temporarily* of the use, either of the whole, or of a part, of the leased premises, to which he must submit and be content with a diminution of the rent, provided the repairs should continue for a longer period than one month. In the latter case the lessee is not obliged to submit, but have his action *ex conducto,* in which event he may also be indemnified for all loss which results to him as a consequence of the vices and defects of the thing leased.

The theory upon which the fixation of a different rule for measuring the compensatory rights of the lessee in the differently conditioned cases, under the respective articles, *supra,* is based, is that, in the case where the leased property is inherently defective, that is, where its vices and defects are such as may prevent its being used, there then results a breach of the implied warranty, which thus enables the lessee to sue for the dissolution of the lease; and, as in all cases of breach of warranty, the resulting loss, if any, must be indemnified to the warrantee.

In the case of simple repairs, repairs which unforseen events, or decay, may have rendered necessary, C. C. 2693-2717; there is then,—although the lessee may be deprived of the use of the whole, or a part, of the leased premises during the period required to make the repairs,—no breach of the implied warranty; and as he may not, therefore, be permitted to dissolve the lease, there can be no resulting damages flowing therefrom.

This is the underlying principle which runs throughout the many decisions of the Supreme Court concerning this question; and, as we read them, they are uniform to the effect that the indemnifying clause of each article is confined to the particular class of cases treated by these respective articles of the Code.

In Pontalba, vs. Domingon and al. 11 La. 192 the defendants were sued for the rest of the store leased by them and which they abandoned before the expiration of the term of the lease because as they alleged in their answer, "the house became so bad, for

want of repairs, which the lessor was bound to make, but which he failed to have done, until defendants were compelled to remove his goods and hire another store." They prayed for a recission of the lease and for $500.00 damages. There was judgment below in favor of the defendant, but without damages.

The Court, Martin-J-being the organ, said:

"It appears to us that the judgment ought to be reversed. The repairs were necessary, and the lessee was bound to suffer them to be made and was entitled to *no allowances therefore except a suspension of the rent during the time he was obliged to quit the house*. La. Code 2670."

In Dussnan, vs. Generis 6 A. 279, the tenant was driven out of the leased premises by the overflow caused by a crevasse, and when sued for the rent set up the defense that the least was dissolved by the fact that the house was rendered untenatable by the crevasse. The Court said that as the lessee was not deprived absolutely of the use of the premises, although subjected to inconvenience, the lease could not be dissolved; but that the lessee was entitled to a reduction of the rent for the time he was unable to occupy the premises.

In Perret et al, vs. Dupre et al 19 La. 341 and on second appeal in same case 3 Rob. 53, it is held, however, that where the leased property is incapable of being rendered fit for the purpose for which it was leased otherwise than by rebuilding it, the lessee may dissolve the lease; but if he does not choose to do so, or refuses the offer of the lessor to dissolve the lease, the lessor will not be responsible for any damage subsequently sustained by the lessee.

In Coffin vs. Redon 6 A. 487 the lessee was sued for the rent; he reconvened and prayed for the dissolution of the lease on the ground "that there were inherent defects and vices in the construction of the building which rendered it dangerous to tenants and passengers and unfit for the use he had intended to make of it." The Court said: "The question upon this case turns, is, whether the changes which the plaintiff made in the building were repairs, in contemplation of the parties to the lease, or reconstructions rendered necessary by inherent defects of the building." If they

are repairs, the case must be governed by Art. 2670 (now 2700) of the Code. The defendant must suffer them to be made, whatever be the inconvenience he undergoes thereby, and although he may be temporarily deprived of the use of the building. He is entitled in such a case to a remission of the rent, but has no action for the dissolution of the lease. If, on the other hand, the work done was a reconstruction of a part of the building, rendered necessary by a defect in the original construction, there is a breach of the lessor's implied warranty, that the thing leased was free from any vices and defects which might prevent it being used; and even if it should appear that the lessor knew nothing of those vices and defects, or that they have arisen since the lease was made, provided they did not arise from the fault of the lessee, the defendant is entitled to a dissolution of the lease. C. C. Art. 2665" (now 2695) The Court found that "the fact that the building was originally defective is proved beyond all doubt," and dissolved the lease.

In Denan, vs. Lopez, 12 A. 823, all the above authorities are cited and approved, and accordingly it was held that where the wall of a leased property was injured by fire and the falling of another wall against it, but it could be repaired, the lessee "cannot base a claim for relief on Arts. 2665, (now 2695) or 2667 (now 2697) or 2669 (now 2699)." His only relief was under Art. 2670 (now 2700). In Pargoud, vs. Tourne 13 A. 292 plaintiff claimed rent of the defendant who reconvened for damages caused to his goods by the sinks of the adjoining property. The sole question said the lower Court "is whether defendant, who was the lessee, has a right of action for the damages against plaintiff, the lessor." Plaintiff relied on Art. 2665 C.C. (now 2695); to this the Court said that as there was no vice or defect in the division wall, this article had no application whatsoever to the case; the Court therefore rejected the demand for damages.

In line with the above authorities are King, vs. Grant 43 A. 817; Jackson, vs. Maunsel 33 A. 1342; Kaiser, vs. City 17 A. 178; Coleman vs. Haight 14 A. 570 *and particularly* Redon, vs. Boffin 11 A. 695 and Bonnecaze, vs. Beer, 37 A. 351, the two cases relied on by plaintiffs as authority for their contention.

135

These authorities not only do not sustain plaintiff's contention, but they are directly to the contrary.

Let us examine them. Redon, vs. Coffin, 11 A. 695 does recognize the right of the lessee in *that case* to recover damages, and does allow them; but what was the nature and character of that case? Was it one of *repairs* and founded on Art. 2700 C.C.; or was it not one of *reconstruction,* founded on Art. 2695 C.C. (old No. 2665) and *predicated on a final judgment previously rendered in a cause between the parties, formally dissolving the lease because of the existence of such inherent defects in the leased premises, as to render it absolutely unfit for use?* That suit was the sequence of Coffin vs. Redon reported in 6 A. 487, and already referred to. Redon, the lessee, was sued for rent and he recovered and prayed for the dissolution of the lease "on the ground that there were inherent defects and vices in the construction of the building, which rendered it dangerous to tenants and passengers, and unfit for the use he had intended to make of it."

The Court found it was "clear that the defendant could no longer apply the rented premises to the use he intended when he agreed to pay so high a rent, and that his attempt to continue in them must have been followed with heavy losses and perhaps entire ruin," adding "it is impossible to suggest a case which would come within the provisions of Art. 2665 (new number 2695) more clearly than the present." The judgment appealed from dissolved the lease and it was affirmed. Thereupon Redon sued Coffin for the damages which were occasioned him. as stated by the Court, "as a direct result of the defect in the construction of the house leased to him by defendant."

"These damages," said the Court, when considering the appeal in this latter case, (11 An. 695)" the tenant has the right to recover of his landlord under Art. 2665, (new No. 2695) of the Civil Code, because they are the immediate result of the defect of the thing leased."

Bonnecaze vs. Beer, 37 A. 531, the other case relied on by the plaintiffs and appellees, was a case of "repairs," and, as in the case at bar, it consisted in the demolition of an old wall and the

building of a new one. Bonnecaze, who was the tenant, sued his lessor for damages which, as our examination of the record in the Supreme Court advises us, was made up of the following items.

Loss of profits from loss of patronage and from expenses
    and support of employees......................$1,400.00
Damages to stock, fixtures and furniture...............$  400.00
Special damage to the paper on the walls in the rooms
    162 Canal St.................................  200.00
Inconvenience, vexation and annoyance and disturbance
    in business ..................................  500.00

There was judgment for defendant and the plaintiff appealed. The Court explicitly said: "We are satisfied that the rights of the parties are governed by the provisions of Article 2700, C. C." But forasmuch as the Court proceeded to add that the evidence satisfactorily established the damage" occasioned by the cutting of plaintiffs papering," and affirmed the judgment which awarded this item of damage, it is contended that this evidenced the Court's recognition of the right to recover damages in cases falling under the operation of Art. 2700, C. C.

Again examining the record of that case we find that the judgment appealed from whilst dismissing plaintiffs suit likewise reserved to him "the rght to still accept the offer of the defendant to paper plaintiff's establishment, or to accept from the defendant in lieu thereof the sum of $200.00, the plaintiff, to have the option between the two." This was done because the defendant admitted this right consented to it in its answer filed to plaintiff's suit. The appelleee did not answer the appeal and hence did not pray for any amendment of the judgment. Pretermitting the fact that after confessing to this liability the defendant could not be relieved of it, even if he had answered the appeal and had so prayed, the fact remains that the defendant, Beer, did *not answer the appeal at all,* and hence if the lower Judge had awarded judgment against him for any amount and under any of the items of damages, no relief could have been afforded him on appeal, because he had asked for it. It certainly, therefore, cannot be said that this cause at all holds that damages may be recovered in cases coming under the operation of Art. 2700 C. C.

We are also referred to Fuzier-Hermann, who commenting on Art. 1721 of the Code Napoleon, says:

"The tenant may even in the case where the lessor was not aware at the time of the lease of the existence of the *vices* of the thing leased, recover from the lessor not only a reduction of the rent, proportioned to the enjoyment of which he has been deprived, but also indemnity for the losses and damage of every kind, which those *vices* have occasioned."

Considering that Art. 1721, C. N., and Art. 2695, C. C., are substantially similar, this commentator does nothing more than to repeat what is the textual provisions of these articles. No one disputes that under Art. 2695, C. C., the lessee is relieved from the payment of the stipulated rent for the time he has been deprived of the use of the property; for we have shown that the authorities are uniform to the effect that he may rescind the lease; and as to his right to be indemnified "for the loss and damage of every kind which those vices have occasioned," Art. 2695, C. C., specifically declares.

It is Article 1724, C. N., that is similar to our Art. 2700, C. C. Neither Fuzier Hermann nor any other commentator of the French Code, nor of France, so far as our investigations have gone have asserted, or held, that under Art. 1724, C. N., the lessee may recover anything beyond a diminution of rent; unless, as we repeat and in order to guard against any misunderstanding, the damage is the consequence of some *fault* of the lessor, which under the general law, would oblige him to repair it. No such case, however, is presently presented. Our conclusion is, therefore, that the plaintiffs are entitled to recover only a diminution of the rent, which our esteemed brother of the lower Court has fixed at $75.00 and about which there is no dispute.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing same from one hundred and sixty dollars to the sum of seventy-five dollars, and as thus amended the judgment is affirmed. The costs of appeal to be taxed against the appellee.

January 9, 1906.

Rehearing refused Feb. 5, 1906.

Writ granted March 19, 1906.

Judgment reversed by Supreme Court May 22, 1906.