THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. LEWIS BILLINGS.

No. 15,324.   (93 Pac. 590.)

SYLLABUS BY THE COURT.

1. INJUNCTION — *Mandatory — Construction of Cattle-guards.* Where a railway company neglects for a long time to construct cattle-guards where its road enters and leaves improved or fenced land, a mandatory injunction may properly issue commanding and compelling it to construct and maintain cattle-guards as the statute requires.

2. DAMAGES—*Duplication—Failure to Maintain Cattle-guards.* The record of that branch of the case seeking a recovery of damages for losses already sustained examined, and it is *held* that there was no duplication of damages in the award made by the jury.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed January 11, 1908. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*A. L. Billings,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Lewis Billings against the Atchison, Topeka & Santa Fe Railway Company to recover damages resulting from the failure of the company to maintain proper cattle-guards where the railway enters and leaves the fenced fields of his farm, and also to enjoin the company from hereafter operating its road through the farm without completing the enclosures on his farm with cattle-guards as the law prescribes. As the railway is constructed it intersects the fenced boundaries of Billings's farm of 533 acres at eight places. His land had been fenced and arranged for farming and stock-raising, provision having been made for the rotation of crops and the handling of stock so that water, shade and shelter were available. It was shown beyond cavil that the railway company neglected to maintain cattle-guards at the intersection of the boundaries of Billings's farm for a period of two years prior to the commencement of this action. At some places there were no cattle-guards of any kind for a time, and at other places unsuitable guards were maintained, which did not prevent stock from entering his fields and passing from one field to another along the right of way. The verdict of the jury awarded Billings damages in the sum of $410.50, made up of the following items: For labor expended in guarding cattle in 1903, $34; for the guarding of cattle sixty days in 1904, $60; for loss of pasturage, $50; for diminished rental or usable value of the entire farm, two years, twenty-five cents per annum per acre, amounting to $266.50.

That Billings was entitled to some damages is not contested, but it is argued in behalf of the railway company that there is a duplication of damages in the ver-

dict, and that the item of $266.50 for depreciation in
the rental value of the farm should be deducted.   An
examination of the testimony and findings, however,
does not lead to the opinion that there was a double
allowance for the same loss.   In his petition Billings
alleged, and offered proof showing, specific expenses or
losses for watching cattle at particular times, made
necessary by the openings which the railway company
left in his fenced fields.   The item of pasturage was
apparently allowed for the complete loss of grass and
fodder in particular fields which Billings was unable to
use because of the absence of cattle-guards at the inter-
sections of his fences.   The allowance of twenty-five
cents an acre appears to be for depreciation and loss
from the inability of Billings to use his farm as it was
designed to be used and the increased inconvenience and
expense of carrying on the business in which he was
engaged.   The testimony is that his plans were de-
ranged and that his farm, which had been arranged
and fenced to carry on a cattle business, was rendered
unfit for that use, so that instead of keeping and feeding
from two to three hundred head of cattle, as before, he
was compelled practically to abandon the business and
had only been able to handle about twenty head of cat-
tle.   For this depreciation and loss the jury allowed, on
a per acre basis, $266.50 for the period of two years.
These items were pleaded separately; they were treated
as separate and distinct losses in the testimony, and the
court in instructing the jury treated this depreciation
of rental value as something wholly apart from the
specific losses of guarding cattle, as well as that arising
from the loss of a particular pasture.   Although com-
plaining of the allowance of the item of $266.50, the
railway company does not ask for a reversal of the
judgment because testimony was admitted on the basis
that these items were distinct losses, nor that they were
so submitted in charging the jury.   All that is asked in
behalf of the railway company is that the last item be
stricken out.   A reading of the record does not con-

vince us that double damages were allowed for any loss arising out of the neglect of the company, and, considering the evidence as to the loss sustained in consequence of the company's neglect, the award is far from excessive.

It is next contended that the court was not justified in issuing a mandatory injunction. Upon the testimony it was found that the operation of the railroad through the Billings farm without cattle-guards, and the company's persistent and long-continued neglect and refusal to close up the openings with cattle-guards, after due notice, was a continuing nuisance. The decree of the court enjoins the company from continuing the nuisance, and commands it to keep and maintain proper guards at all points where the railroad enters and leaves the fenced lands of Billings. It is true, as contended, that the particular function of the remedy of injunction is to restrain and prevent, rather than to command and compel; but there is unquestioned power in a court of equity to issue mandatory injunctions on proper occasions. It is a remedy to be sparingly exercised—one that is rarely granted until after a final hearing and except in cases where the injury is irreparable, the remedy at law inadequate, or to prevent a multiplicity of suits. It has been granted where a railway company in constructing its road built an embankment which wrongfully diverted the running water from the land of a person through whose land the water naturally flowed before the road was built. It was contended there, as here, that the damages inflicted were measurable and that the exigencies of the case were not such as to warrant the exercise of the mandatory power of a court of equity. This court, recognizing the rule that the remedy can only be employed in extreme cases, held that it was a proper occasion for issuing a mandatory injunction and affirmed the decree compelling the opening of the waterway. (*A. T. & S. F. Rld. Co. v. Long,* 46 Kan. 701, 27 Pac. 182, 26 Am. St. Rep. 165.) A railway company has been compelled to perform the

Railway Co. v. Billings.

duty to receive and move the cars of another company. (*Chicago, B. & Q. Ry. Co. v. Burlington, C. R. & N. Ry. Co.*, 34 Fed. 481.)   A consumer of gas who had affixed a governor to a meter without the consent of the gas company was commanded to remove the same by a mandatory injunction.   The act of attaching the governor to the meter belonging to another was designated as a trespass of such a character as to justify a mandatory order.   (*Blondell v. Consol. Gas Co.*, 89 Md. 732, 43 Atl. 817, 46 L. R. A. 187.)   A patron of a natural-gas company who had contracted with the company to furnish him a supply of gas to manufacture glass, and had expended much money in fitting his factory with appliances for using gas, was granted an injunction preventing the company from shutting off the supply and also compelling it to restore the flow of gas as it existed before the wrongful interference and stoppage of the flow, and this on the ground that the loss was incapable of accurate adjustment.   (*Whiteman v. Fuel-gas Co.*, 139 Pa. St. 492.)   In *Scofield v. Railway Company*, 43 Ohio St. 571, 3 N. E. 907, 54 Am. Rep. 846, an injunction was issued compelling a railway company to give a shipper equal facilities and rates, such as were given to other and more-favored shippers, and it was issued largely upon the theory that to obtain relief at law would necessitate a multiplicity of suits. The writ has also been allowed to compel the removal of enclosures around public school-lands which it was held constituted a nuisance.   (*The State v. Goodnight*, 70 Tex. 682, 11 S. W. 119.)   In *United States v. Brighton Ranche Co.*, 26 Fed. 218, Judge Brewer held that a suit for an injunction was the appropriate remedy to compel the removal of a fence which had been erected on government land.   The mandatory injunction was awarded, although it was conceded that the government had a right to proceed by an action of ejectment to remove the defendant from the occupancy of the land.   It was remarked that "whether the act of the defendant comes within the technical definition of pur-

presture, or that of a public nuisance, we are of the opinion that the government can come into a court of equity and by its orders have an end put to this trespass on the public rights." (Page 218.) Where one person built a wall partly projecting on the land of another, who applied to a court of equity to secure the removal of the wall, it was ruled that there was no plain and adequate remedy at law for the wrong and that a mandatory injunction should issue requiring the offender to remove the structure. (*Norton v. Elwert,* 29 Ore. 583, 41 Pac. 926.) In *Wheeler v. Rochester and Syracuse Railroad Co.,* 12 Barb. (N. Y.) 227, a railroad company was proceeding to construct its road across the farm of Wheeler without providing such farm crossings as the law required, and the court held that the company should be enjoined from proceeding with the construction of the railroad without providing suitable crossings. It is not uncommon for courts of equity to grant writs prohibitory in form which are mandatory in character and effect. So it was said by the vice-chancellor in *North of Eng. Junc. Railway Co. v. Clarence Railway Co.,* 1 Coll. (Eng.) 507, "that injunctions in substance mandatory, though in form merely prohibitory, have been and may be granted by the court is clear. This branch of its jurisdiction may be one not fit to be exercised without particular caution, but certainly it is one fit and necessary under certain circumstances." (Page 521.) The foregoing are only a few of the many cases which might be cited wherein mandatory injunctions have been issued. Other examples which illustrate the circumstances under which the remedy may be employed are collated in the note to *Moundsville v. Ohio R. R. Co.,* 37 W. Va. 92, 16 S. E. 514, in 20 L. R. A. 161.

In this case it was developed that, several years before the bringing of this action, Billings had been compelled to bring another action and had recovered damages resulting from the neglect of the railway company

to maintain cattle-guards at the intersections of his farm. Before bringing the present action he had given notice of the defects and unsuccessfully endeavored to induce the agents and officers of the railway company to provide and maintain cattle-guards. The opening of these gaps in his fields and the operation of the railroad through them without maintaining cattle-guards was contrary to the express provision of the statute and a direct invasion of Billings's rights. It was a wrong of such a character, and had continued for so long a time, as to constitute a nuisance, and one which justified the issuance of a mandatory injunction. It is argued that in his petition the plaintiff did not designate the wrong as a nuisance nor ask that the court declare it to be a nuisance. The allegations of the petition, however, describing the wrong and injury charged a course of conduct and such an invasion of the plaintiff's rights as would constitute a nuisance, and, upon proof of the same, the court was justified in the finding that was made. Apart from that finding the injury was of such a character that any other remedy would have been wholly inadequate, and under the authorities cited a mandatory injunction was an appropriate remedy. The statute, it is true, provides that where a railway company neglects to maintain cattle-guards the injured party may recover damages from the wrong-doer, but it is plain that he cannot be adequately compensated in damages for the injury inflicted. For his protection many actions at law would be necessary, and in none of them could adequate compensation be recovered. In one sense the injunction restrains as well as commands. It restrains the railway company from operating its road through the plaintiff's fenced fields without closing the openings with cattle-guards and from continuing the nuisance. But, of course, it is substantially mandatory in character, and proceeds on the assumption that the company will continue to operate its road, and commands it to construct and maintain cattle-guards

during the time of operation. The facts in the case furnish an example of one of the extreme cases which justify the issuance of a mandatory injunction.

The judgment of the district court is affirmed.