[State, ex rel. City of Mobile v. Board of R. & R. Com. Mobile Co.]

priations, in case there is not a sufficient sum on hand to reimburse the city. Indeed, the agreement as to the facts shows that the $20,000 set apart for the year 1912 was so set apart upon the condition that so much thereof as would be necessary to reimburse the city should be refunded, in case this claim was decided in favor of the city. It also appears from paragraph 8 of the agreement that $12,317.62 was on hand when this petition for mandamus was filed.

The other questions argued upon rehearing are discussed in the original opinion, and we think have been properly decided. The application for rehearing is overruled.

# State, *ex rel.* City of Mobile *v.* Board of R. & R. Com. Mobile Co.

## *Mandamus.*

(Decided February 6, 1913.   Rehearing denied March 18, 1913.
61 South. 368.)

1. *Mandamus; Uses; Office of.*—Ordinarily the office of a writ of mandamus is to coerce the performance of a single act of specific and imperative duty; the court will not compel the performance of a series of continuous acts by mandamus.

2. *Same; Discretionary Acts; Corrections of Error.*—Where a duty is judicial or discretionary, mandamus will lie to compel the exercise of such judgment or discretion, but not to direct the manner of its exercise; neither can the writ be used for the correction of errors.

3. *Same; Repair of Streets.*—Under Acts 1907, p. 727, mandamus will lie on the relation of the city of Mobile to compel the Board of Revenue and Road Commissioners to exercise their judgment as to the repair of the streets within the territory designated by said act, they having refused to repair the streets put under their jurisdiction by said act on the ground that it was not their duty to do so.

4. *Municipal Corporation; Repair of Streets.*—Acts 1907, pp. 790-892, does not repeal Local Acts 1907, p. 727, placing the control and supervision of certain streets in the city of Mobile in the Board of Revenue and Road Commissioners.

[State, ex rel. City of Mobile v. Board of R. & R. Com. Mobile Co.]

5. *Same; Duty to Repair.*—Local Acts 1907, p. 727, divests the city of Mobile of the duty of repairing the streets named therein, and imposes such duty on the Board of Revenue and Road Commissioners of Mobile county.

6. *Mandamus; Demand; Condition Precedent.*—No preliminary demand was necessary before bringing mandamus to compel the Board of Revenue and Road Commissioners to exercise its judgment in the matter of repairing certain streets in the city of Mobile over which it had entire control.

7. *Statutes; Title; Subject Matter.*—Local Laws 1907, p. 727, is not unconstitutional on the ground that its title contains more than one subject.

8. *Consitutional Law; Rate of Taxation; Highways.*—Local Acts 1907, p. 729, is not necessarily in conflict with section 215, Constitution 1901, limiting the rate of taxation, as it contemplates that some part of the general fund, raised by taxes levied by the county, shall be used, and will be construed as limiting its implication of expenditure to revenues, to be raised otherwise than by special tax.

9. *Same.*—With the exception of section 220, Constitution 1901, the authority of the legislature over streets and highways is unrestrained, and Acts 1907, p. 727, is not unconstitutional because it authorizes the revenue of the county to be applied to the repair of city streets.

10. *Same.*—Acts 1907, p. 727, is not in conflict with section 216, Constitution 1901, as the road tax therein mentioned is not the special tax referred to in the Constitution, nor is it a property tax.

11. *Same; Construction.*—If as applied to a certain class of cases, a statute would result in a violation of the Constitution, but no such result would follow if the application is to another class of cases, the statute will be construed as applying to the latter class only if this construction is in harmony with the general legislative purpose.

12. *Same.*—Whether the policy of the statute is sound, will promote the public good, and is in harmony with natural right or abstract justice is a matter addressed to legislative and not to the judicial department of the state.

(McClellan, J., dissents.)

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

Mandamus by the State of Alabama on relation of the City of Mobile against the Board of Revenue & Road Commissioners of Mobile County and others. From a decree sustaining demurrer to the petition, petitioner appeals. Reversed and remanded.

The petitioner alleges the fact that it is a municipal corporation, and that, in accordance with the terms of section 1, Local Acts 1907, p. 727, it became and was

the duty of the board of revenue and road commission-
ers to keep in repair and maintain in good condition
those streets and thoroughfares of the city of Mobile
set out and described therein, and as contained in said
section 1, which is set out in full; that the board of
revenue and road commissioners have neglected and
positively refused to repair, maintain, and improve the
streets and thoroughfares described in said section,
claiming that it was not their duty to do so, as there was
no law in force or effect requiring them to do so. It is
further alleged that there is no adequate remedy at law
to compel them to do so, except by obtaining the extra-
ordinary writ of mandamus, which is prayed for. The
respondents demurred on the ground that the statute
was unconstitutional as violative of section 215, Con-
stitution 1901, because, by the terms of the act, a dis-
cretion is vested in the board as to whether or not it
will repair, maintain, and improve said streets and
thoroughfares which cannot be controlled by the court,
because the city of Mobile has no manner of interest in
the subject-matter of the petition, full, adequate, and
complete remedy at law for any wrong that may be
suffered by reason of the refusal, and because manda-
mus will not lie, nor can the supervision be compelled
or enforced by the court.

B. BOYKIN BOONE, and STEVENS, LYON & DEAN,
for appellant. A statute will never be declared uncon-
stitutional when it can be construed otherwise reason-
ably with the legislative purpose and intent.—*State ex
rel. Myer v. Green,* 154 Ala. 249. When words which
would render a statute unconstitutional may be stricken
and not affect the purpose and the legislative intent,
such words will be stricken and the act upheld.—*Kents
v. City of Mobile,* 120 Ala. 623; *Brown v. City of Mobile,*

123 Ala. 159; 103 U. S. 459; 116 U. S. 252. Mandamus may be invoked to compel the exercise of discretion, and that is all that is asked in this case.—*Bd. of Rev. v. B'ham W. W. Co.,* 160 Ala. 152; *State ex rel. v. Hamil,* 97 Ala. 107; 97 Tenn. 489; 176 U. S. 221. Where non-action amounts to an evasion of public duty, a mandamus will be granted.—176 Ill. 576; 123 Ill. 227; 2 Duval 243; 55 Tex. 389; 26 Cyc. 297. Local Acts 1907, p. 727, was not repealed by the Municipal Code Act, nor is such act in conflict with the Constitution. —*Bd. of Rev. v. City of Birmingham,* 54 South. 762.

SULLIVAN & STALLWORTH, and GREGORY L. & H. T. SMITH, for appellee. The statute under which the appellant is proceeding is unconstitutional because it provides in its caption for several separate and distinct matters, and violates section 45 of the Constitution. It also violates section 215 of the Constitution of 1901.— 23 Pac. 1032; Secs. 5823, et seq. Code 1907. The statute authorizes the county to pay a part of the costs of maintaining the streets of the city, and in effect evades the real purpose of section 216, Constitution 1901. It is plain that the act in question is repealed by the Municipal Code Act. The city had no right to proceed by mandamus.—Elliott on Roads & Streets, section 481; Spelling on Extraordinary Remedies, sec. 1384-5; *Ex parte Merritt,* 142 Ala. 116; 168 U. S. 336; 26 A. & E. Enc. of Law 102; *Electric L. Co. v. M. & H. Ry. Co.,* 109 Ala. 195. No demand was made for the exercise of this judgment or discretion, and this was necessary. —*Ex parte Edwards,* 123 Ala. 102; 29 S. E. 581; 45 Mich. 116. There is no allegation of sufficient funds on hand to do the work required.—26 Cyc. 316, 319; 29 N. Y. 247.

SAYRE, J.—By an act of August 2, 1907, it was provided: "That the entire control, management and supervision of public roads in the county of Mobile, and of all streets within the city of Mobile, south of and including Virginia street," etc. (describing certain outlying area within the incorporated limits of the city of Mobile) "are hereby lodged and vested in the board of revenue and road commissioners of Mobile county and said board shall have full and complete authority to provide for the repair, maintenance and improvement of the same, and to that end may, in addition to the fund realized from the "road tax" herein provided for, set apart and appropriate such amount from the general fund collected under authority of the law, as said board may deem necessary to carry out the provisions of this act."—Acts, p. 727. The city of Mobile, averring "that said board of revenue and road commissioners of Mobile county have neglected and positively refused to repair, maintain, and improve the streets and thoroughfares of the city of Mobile described in section 1 of said local act of the Legislature of Alabama of August 2, 1907, claiming that it was not its duty so to do and that there was no law in force or effect requiring the board of revenue and road commissioners so to do," applied for the writ of mandamus to compel the board to "take charge of and to repair, maintain, and improve the streets and thoroughfares within the city of Mobile" described in the act. A demurrer, taking various grounds against the application, was sustained, and the city has appealed.

The ordinary office of the writ of mandamus is to coerce the performance of single acts of specific and imperative duty. The court will not undertake to compel the performance of a series of continuous acts, as it is impossible to furnish that superintendence without

**494**        SUPREME COURT        [Vol.

which the court's mandate becomes nugatory. It is well-settled law also that, where the duty to be performed is judicial or involves the exercise of discretion on the part of a tribunal or officer, mandamus will lie to set judgment or discretion in motion, but will not direct the manner of its exercise. The writ cannot be used for the correction of errors. "If, however, judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof."—19 Am. & Eng. Encyc. pp. 737-739, where numerous cases are cited, including our case of *White v. Decatur,* 119 Ala. 476, 23 South. 999. And, "if by reason of a mistaken view of the law or otherwise there has been in fact no actual and bona fide exercise of judgment and discretion," mandamus will lie.—*Ib.,* citing *Mobile Mut. Ins. Co. v. Cleveland,* 76 Ala. 321, among other cases. We think the case made by the petition falls within the purview of these rules. It has been noted that the inaction of the road commissioners is based upon their conception that they are under no duty in the premises. More specifically, their opinion appears to be that there is no law in force and effect requiring them to exercise judgment and discretion in respect to the repair, maintenance, and improvement of the thoroughfares of the city of Mobile within the limits designated by the statute, and this wholly without regard to the actual condition of those thoroughfares. It is manifest, on the case presented, that the course of the commissioners has been determined by their judgment either that the act in question is not entitled to respect as being without the constitutional authority of the Legislature, or that, if constitutional, the act confers authority without imposing duty. Of course the commissioners cannot take shelter behind an erroneous interpretation of the stat-

ute; and, if their judgment in reference thereto is
wrong, their nonaction—their refusal to consider the
care of these streets on the specific grounds alleged in
the petition—amounts to an evasion or denial of posi-
tive duty under the law.  For such a situation there is
no other remedy; and we are of opinion that the writ
of mandamus may be awarded for the definite end and
purpose of advising the commissioners of their error
and at once imposing upon them the duty of exercising,
under the sanction of their official oaths, judgment in
respect to the repair and maintenance of the streets
and thoroughfares within the designated territory.  It
may be that, upon such consideration, they will de-
termine that nothing need be done at this time.  If so,
the prayer of the petition will have been answered, so
far as it requires answer, the appropriate office of the
writ performed without impairment of that just dis-
cretion lodged by law in them in respect to the manner
and extent of the repairs and improvements required,
and the law will have been vindicated.

We have noted the date of the act out of which this
case has arisen.  Eleven days later the Legislature
passed "An act to provide for the organization, incor-
poration, government and regulation of cities and
towns, and to define the rights, powers, duties, jurisdic-
tion and authority of such cities and towns and of the
officers thereof," etc.  Acts 1907, pp. 790-892, which pro-
vided that all laws and parts of laws, both general and
special, in conflict therewith, were thereby repealed.
This act has been known as the Municipal Code Law,
and went into the chapter on municipal corporations
of the Code of 1907.  It confers upon municipal corpo-
rations the general power "to provide for the safety,
preserve the health, promote the prosperity, improve
the morals, order, comfort and convenience of the in-

habitants of the municipality." So far as this provision affected municipalities incorporated before the date of the act, it merely confirmed powers which all cities of consequence in this state had theretofore exercised under their local legislative charters. It recognized and continued in effect the regulation of local charter acts, in respect of streets, by providing for the distribution of power in respect to the care and maintenance of streets between the council and the board of public works in those cases where cities had such boards. Sections 1273, 1274, 1275, of the Code, taken from the act for the incorporation of cities and towns, seem to have been formulated in view of an assumed duty on the part of such corporations to care for the repair and maintenance of streets. The duty is recognized; but it is not imposed in affirmative language. The effect of these sections is to restrict liability in cases of injuries resulting from neglect, carelessness, or failure to remedy defects in streets, alleys, or public ways, and to hedge about suitors in such cases, with limitations and restrictions in addition to those obtaining in ordinary cases. Otherwise the municipal code makes no reference to the ordinary care and repair of streets. Duty and responsibility as to that are left as they were fixed by the local charter. We find in the Municipal Code Law no express provision for the repeal of the local act of August 2, 1907, nor any ground for holding that there has been a repeal by necessary implication.

In the outset, we quoted the relevant language of the act of August 2, 1907. The terms of that act as effectually divest the city of Mobile of the control, management, and supervision (by which we understand the duty of ordinary repair from time to time) of these streets as if such had been the precise form of expression employed by the Legislature. There is no indica-

[State, ex rel. City of Mobile v. Board of R. & R. Com. Mobile Co.]

tion of a purpose to confer upon the board of revenue the power of improvement by assessments of the cost against abutting property; and probably, in the present state of the laws of that locality, such power cannot be exercised by either the board of revenue or the municipality. But as to that we need not inquire; no such question being raised by the record. It is scarcely to be supposed that the Legislature intended to leave these streets as derelicts for which no one needed to care; nor is it much more likely that the intention was that, with the municipal authorities relieved of all responsibility, the county authorities should be vested with an arbitrary power and discretion to give attention to these streets or to totally and continually neglect them as they might be moved by whim or caprice. On the contrary, we think the construction of the act to be that, when the Legislature conferred upon the road commissioners entire and exclusive authority in respect to the control, management, and supervision of these streets, it imposed also a correlative and coextensive imperative duty; that it created a trust to be administered for the public. The municipal government was relieved of duty and responsibility in the premises; but the beneficial interest of the people, and of the municipal authorities as their representatives, in the maintenance of these streets as passable ways, remained exactly as it was before the act was passed. The duties, then, imposed by the act must be discharged. "They cannot be laid down or suspended or abandoned without the legally expressed consent of the state. The trusts are active, potential, and imperative, and must be executed until lawfully surrendered, otherwise a public highway * * * is closed without any process recognized by law. This is something no public officer, charged with the same trusts and duties in re-

gard to other public highways, can do without subjecting himself" to compulsion or punishment. Hence our conclusion that consideration and decision in respect to the duties imposed by the act may be enforced by the writ of mandamus, and that the municipality is a proper party as relator.—*Bridgeton v. Traction Co.,* 62 N. J. Law, 592, 43 Atl. 715, 45 L. R. A. 837; 26 Cyc. p. 398, note 32.

Public duties ought to be discharged without waiting for the prod of a judicial writ. No preliminary demand was necessary.—26 Cyc. 443.

Of the financial ability of the county at any particular time to repair streets within the designated territory, a condition to be considered in connection with the resources of the county and other demands upon its treasury, and determined in the exercise of a sound and just discretion, respondents must of necessity be better informed than others; and, other conditions calling for the writ being shown, it would seem that the lack of funds ought to be urged in defense. But that consideration is not of moment in the case made by the petition, for it is made to appear that respondents have failed and refused to consider at all whether the streets covered by the act needed repair, or whether the financial conditions of the county would justify expenditure on that account. They have proceeded upon the idea that in no event has the duty of considering these matters devolved upon them. This means that they have not considered, and will not consider, the financial aspect of the proposition unless driven thereto by the court's imperative mandate. The effect of the writ will be to set aside this sweeping denial and repudiation of all duty and responsibility in the premises, to compel the exercise of that discretion lodged by law with the

respondents, and that is one of the appropriate offices of the writ.

This brings us to a necessary consideration of the alleged unconstitutionality of the act. Premising with the general observations, which no one in this state will deny, that the question is one of legislative power, and that we have no right to exercise ourselves about the policy or wisdom of the statute, that the Legislature has a power which is so transcendent that it cannot be confined within any bounds, either for causes or persons, except such as are written in the organic law *(Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128), and that he who assails a statute on the ground that it is unconstitutional assumes the burden of vindicating his position beyond a reasonable doubt *(State ex rel. Meyer v. Greene,* 154 Ala. 254, 46 South. 268), we will briefly note our conclusions in respect to the several grounds that have been taken against the act.

It is said that the caption contains more than one subject-matter. The caption is: "To provide for the more efficient working of the public roads in Mobile county and certain streets and public thoroughfares in the city of Mobile; provide for the control, working, building, maintenance and improvement of the same by the board of revenue and road commissioners of Mobile county; to prescribe the duties and fix the authority of said board; provide for the levy and collection of a road tax, and the method of disbursing moneys necessary to carry out the provisions of this act, and provide penalties for violations of its provisions." The several subdivisions of this title are all germane to one another, and might well have been grouped under the broader subject of highways in Mobile county. Certainly the Legislature might in one act have made all necessary and appropriate provisions for any highway in the

county between designated points, though one of the points lay within, and the other without, the city; and we apprehend it might have referred indifferently to the thus definitely located and described subject of legislation as a highway, road, or street, without going so far astray or putting the matter into such obscurity as to destroy the effect of the act. In other words, while it is admitted that, as commonly used, "street" means a highway in a city or town, and "public road" means a rural highway, still there is no such fundamental difference between them as that the Legislature may not deal with both in one act. They constitute one general subject; they are highways. Mere generality of title does not invalidate a statute, so long as it fairly expresses the subject-matter, and is not made a cover for the inclusion of incongruous and unrelated matters. This title does not contain the word "highways," but that general subject is divided, for the reason, perhaps, that only a part of the streets of the city were to be affected by the act; and with these divisions all else that follows is intimately connected, both in fact and in idea. The subject of an act "may be expressed in general words, or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the act. The Constitution is satisfied if the act has but one general subject, and that is fairly indicated by the title."—*Lindsay v. U. S. Savings Association,* 120 Ala. 156, 24 South. 171, 42 L. R. A. 783. The objection to the act on account of its title was not well taken.

Unquestionably the act contemplates that some part of the general fund to be raised by taxes levied by the county shall be devoted to the repair of the streets within the designated area of the city for perhaps so only can its purpose be made completely effective. But

no part of its language contains a direction that any special road taxes that have been, or may hereafter be, levied under authority of the proviso of section 215 of the Constitution, in addition to the maximum general property tax of one-half of 1 per centum limited by the body of that section, shall be diverted from the erection, construction, or maintenance of the public roads of the county, narrowly so called, or applied to the repair of streets in the city. To construe the act as having in necessary contemplation an application of special taxes raised under the proviso of section 215 would bring it into conflict with that proviso as it was interpreted in *Commissioners' Court of Pike v. Troy,* 173 Ala. 442, 56 South. 131, 274; whereas to limit its implication of expenditure to revenues to be raised otherwise brings the act within the influence and approval of the decision in *Board of Revenue of Jefferson v. Birmingham,* 172 Ala. 138, 54 South. 757, followed in *Commissioners' Court of Calhoun v. Anniston,* 176 Ala. 605, 58 South. 252. It is a well-settled rule for construing statutory language that where it would result in the violation of the Constitution if applied to a certain class of cases, but no such result will follow if the application is to another class, it will be held to have been intended for application to the latter class only, if this is in harmony with the general legislative purpose. A fortiori, it would seem, the rule of favor to legislative action must be indulged where, as in the case at bar, the effect, unless we have misapprehended some suggestions found in the brief for appellee, is to work out unconstitutionality, not from the language of the act, but by inference that funds necessary to carry the act into effect will be drawn from a prohibited source, although they may, consistently with the terms of the enactment, be lawfully derived from another. The last construc-

tion and application of the act will be adopted of course.

We are not advised of any sufficient reason for setting aside the rulings of the Jefferson and Calhoun county cases. It runs counter to no expressed inhibition of the Constitution. Nor is there anything in the nature of the subject-matter which would put legislation in the form shown by the act under consideration, outside the letter or the spirit of the Constitution. This is not to affirm that the revenues of a county may be constitutionally applied to any and every municipal purpose. It may be conceded that there are municipal purposes in which the people of the surrounding county have no interest, and that revenue raised by county levy must need be applied to purposes having some proper and substantial relation to county government as it has been established in this and all the states; but the territory of a county does not cease to be a part of the county when it is included within the limits of an incorporated city or town, nor do the people of the county lose their interest in the highways of the incorporated areas. We think it cannot be said that the maintenance of municipal highways within a county, over which not only the people of the municipality, but of the entire county, can travel, is so distinctively and exclusively a municipal purpose as to render the act impossible.— *Duval County v. Jacksonville*, 36 Fla. 196, 18 South. 339, 29 L. R. A. 416. Municipal corporations commonly exercise powers not strictly governmental; but counties and municipalities are alike organized under law to aid the state in the administration of government, of which provision for highways is a most important function. The powers of either may be withdrawn by the state and other agencies clothed with them.—*Askew v. Hale County*, 54 Ala. 639, 25 Am. Rep. 730. "Over local governmental agencies, subject only to the limita-

tions imposed by the letter or the spirit of the Constitution, the legislative power is practically supreme."
—Elliott, Roads and Streets, § 421. Except for section 220 of the Constitution, which relates to the use of the streets by public utilities or private enterprises, the authority of the Legislature over streets and highways is ample and unrestrained.

By the Constitution maximum rates of general taxation for municipal corporations and for counties are limited; and it is argued that the act under consideration has the effect of evading section 216, which limits the amount of general taxes that may be levied and collected by municipal corporations. The substance of the argument seems to be that, in a case where the city has taxed to the limit, the appropriation of any part of the funds raised by county taxation to the maintenance of highways within the city would be equivalent to a levy by the city in excess of the constitutional maximum. It is said that, "if the Legislature may authorize a municipal government to tax its citizens for the repair, maintenance, and improvement of its streets up to the full constitutional limit, and may then require the county to assess the same property in the city for further taxes, and enforce their collection, and turn them over to the municipal government, then the constitutional limitation is a delusion and a snare, and means nothing." To avoid misapprehension we may repeat, what has in effect been already said, that no question of special taxes under the Constitution is involved. There has been no suggestion, nor can it be supported, that either of the state's subordinate taxing agencies, municipal or county, may, by any sort of device or arrangement, be empowered in the levy and collection of taxes, for their respective purposes, to transcend the limits set by the Constitution. But it is

to be observed that appellee's argument rests upon the sole support of the proposition that the keeping of the streets of a city is in its very nature inevitably and exclusively a municipal purpose, as distinguished from any purpose for which county governments are organized. We have stated the considerations upon which we hold to a contrary view.—*City of Tuscaloosa v. Board of Revenue, infra,* 61 South. 431.

So far as the "road tax" mentioned in the act is concerned, that is not the special tax spoken of in the Constitution, nor is it a property tax. The provision for it may have introduced confusion into the act; but that has not been considered as of consequence in the case presented by the record. Just how it may be put into practical operaton has not been critically considered, for that question does not touch the constitutional power of the Legislature in the premises. In respect of this trouble in the law, if, indeed, it be one, and of the confusion that may result from the · dual control of the streets affected by the act, we quote the language of this court in *Winter v. Montgomery,* 65 Ala. 413: "Whether the policy of the statute is sound, whether it will promote the public good, whether it is in harmony with natural right, or abstract justice, are not judicial questions.—*Dorman v. State,* 34 Ala. 216. Nor is it a question for the courts whether, in the expression of its will, the General Assembly has observed a care and caution corresponding to the importance of the subject before them, or the magnitude of the interests to be affected." It is not made to appear that the Legislature has transgressed the limits set for it by the Constitution; and the court cannot be justified in pronouncing its act void.

The demurrer to the petition should have been overruled.

Reversed and remanded.

All the Justices concur, except McCLELLAN, J., dissenting.

### ON REHEARING.

For answer to the point made for the first time on this application that the act in question violates section 104 of the Constitution, we refer appellee to *State ex rel. Gamble v. Hubbard,* 148 Ala. 391, 41 South. 903.