**HAGAN et al. v. STATE ex rel. BATCHELOR.**
**(I Div. 226.)**

(Supreme Court of Alabama. May 11, 1922.)

**I. Mandamus ⬤⟿154(3)—Petition to compel compliance with fever tick eradication campaign need not specify the acts necessary.**

Petition for mandamus to compel county board "to forthwith make adequate appropriations or provisions to execute in good faith" Gen. Acts 1919, p. 29, relative to the eradication of cattle fever tick, is not demurrable as being too indefinite or uncertain under the rule that mandamus will only issue to compel specific acts, for, where the exercise of judgment or discretion is required in the performance of such specific acts, mandamus is proper to set in motion and enforce the exercise of such discretion without directing the manner.

**2. Mandamus ⬤⟿15—Absence of funds, if not intentionally arbitrary or capricious, may excuse absolute performance of the fever tick eradication campaign.**

The absence of the necessary funds to discharge the duties enjoined upon boards. of county commissioners is a consideration that may excuse the discharge of such duties to the extent only that such funds are not available and provided also that the lack of funds is not created by arbitrary or capricious exercise of the board's discretion in the management of other matters.

**3. Mandamus ⬤⟿73(I)—Discontinuance of dipping for fever ticks during winter.months is not within county board's discretion.**

It is not within the discretionary power of the county board to suspend the dipping of cattle for fever ticks during the winter months, particularly where such action is not based on any lack of funds.

**4. Animals ⬤⟿29—Inaccessibility of cattle no grounds for discontinuing fever tick dipping service.**

The fact that many cattle retreat to the swamps during the winter and are not accessible for dipping for the eradication of fever tick will not excuse the county board from maintaining such dipping service, though it might warrant less expenditures and the use of fewer men.

**5. Statutes ⬤⟿110½(I)—Title of act providing for state-wide fever tick eradication held not violative of requirement as to subject and title.**

The act entitled "an act to establish and provide for state-wide eradication of the cattle fever tick, * * *" Acts 1919, p. 29, particularly sections 1, 2, 4, and 13 thereof relating to and prescribing the duties of county boards to be taken in the furtherance of the plan for such eradication is not a violation of Const. 1901, § 45, providing that "each law shall contain but one subject, which shall be clearly expressed in its title."

**6. Mandamus ⬤⟿14(I)—Demand not prerequisite to mandamus to compel resumption of fever tick dipping service unlawfully suspended.**

Where a county board suspended the fever tick dipping service in violation of their authority, no demand is necessary before instituting mandamus proceedings to compel its resumption. .

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Petition for mandamus by the State of Alabama, on the relation of G. B. Batchelor, against John D. Hagan and others, as members of the Board of Revenue and Road Commissioners of Mobile County. From a judgment granting the writ, respondents appeal. Affirmed.

Paragraphs 2 and 3 of respondents' answer to the petition read:

"Second. For further answer to said petition, the respondents say that they have not failed or refused to make adequate appropriation or provision to execute in good faith the statutes pertaining to the eradication of the fever ticks in Mobile county, and further say that they have not refused to comply with the requirements thereof; the respondents do say that they have made adequate appropriation and provisions for the faithful carrying out of said law in the county of Mobile, for the year 1921, by providing adequate vats, chemicals, inspectors, and paying the salaries of said inspectors according to law.

"Third. For further answer to the said petition, respondents say that the law, pertaining to their duties in relation to the eradication of fever ticks in Mobile county, lodged with and gave them a discretion or judgment as to what was or should be an adequate appropriation or provision to execute in good faith the said law, a discretion which they have exercised by making an adequate appropriation for the building and furnishing of vats, the supplying of chemicals and solutions, as provided for in said law, the employment and payment of inspectors as is provided for in said law, and that in the exercise of the discretion given them under the terms of the act, and in view of the fact that it was impossible to find and dip a large portion of the cattle in Mobile county later than October 15th, and in view of the further fact that Dr. C. E. Smith, the federal inspector, who was in charge of this work, admitted to the respondents in an open session of their board that a great many of the cattle had gone into the swamps and could not be gotten out and dipped during the winter months, and in view of the fact that this admission was corroborated by a great number of cattle owners, and in the opinion of the board of road and revenue commissioners the work therefore could not be effectively done during the winter months, and in view of the further fact that the dipping of cattle in cold weather is dangerous, unwise, and cruel to the animals, and will necessarily result in the death of many of them, the respondents, after making ample ap-

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

propriation and provisions for the faithful carrying out of the said law during the year 1921 up until October 15, 1921, said respondents, in the exercise of the discretion and judgment, as given them by the said law, decided that it was unwise and a useless expenditure of the county's money to attempt to continue¯ the dipping of. cattle after October 15, 1921, for the year 1921, and therefore caused to make any further appropriation or provisions after the said date of October 15, 1921."

Gordon & Edington, of Mobile, for appellants.

The writ is insufficient, for that 'it showed on its face that respondents were required to exercise discretion, which is without the purview of the writ. 59 Ala. 321; 100 Ala. 607, 13 South. 779; 137 Ala. 639, 34 South. 684; 180 Ala. 493, 61 South. 368. , Acts 1919, p. 29 is void. Const. 1901, § 45. 75 Ala. 533; 117 Ala. 485, 23 South. 71; 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23; 153 Ala. 112, 45 South. 226; 156 Ala. 654, 47 South. 126; 158 Ala. 61, 48 South. 496; 168 Ala. 179, 52 South. 895; 173 Ala. 470, 56 South. 118; 200 Ala. 456, 76 South. 388. The petition was subject to demurrer in failing to show that the county had sufficient funds to carry out the provisions of the act. 16 Cyc. 434.

Stevens, McCorvey, McLeod & Goode, of Mobile, for appellee.

Mandamus will lie to compel compliance with the act. Acts 1919, p. 32, § 13. The act of 1919 under which the petition is brought is not void or unconstitutional. 303 Ala. 271, 82 South. 521.

McCLELLAN, J. In reference to the tick eradication activities of the state and of the county of Mobile, the board of revenue and road commissioners took this action on October 3, 1921:

"That the dipping season end October 15 [1921], and that all activities connected therewith cease, and that all appropriations of funds for tick eradication be discontinued on October 15, 1921."

On October 10, 1921, notice of this action was communicated by the board's clerk to the Mobile county federal and state agents or officers engaged in this branch of the live stock health service; and also notice of the fact that the board had declined to reconsider its action in the premises. The state, on the relation of Batchelor, instituted this proceeding in mandamus to compel the board—

"to forthwith make adequate appropriations or provision to execute in good faith the laws of the state of Alabama, relative to the eradication of the cattle fever tick, and especially to provide the necessary chemicals, solutions, and all other materials required for making, filling, replenishing, and operating the required number of dipping vats; to furnish all the materials required for keeping the required vats -filled with a standard tick-killing arsenical dip having the composition and strength as required by the regulations of the Alabama live stock sanitary board and of the United States Bureau of Animal Industry; and to pay a reasonable salary to as many inspectors as shall be required in the tick eradication work in the said county of Mobile, Ala."

The petition concluded with prayer for any other and further relief to which the facts averred gave right.

The alternative writ, issued by direction of one of the circuit judges of the circuit pursued, in substance, the quoted prayer of the petition; likewise with respect to the peremptory writ, adjudged due after hearing on pleading and proof.

The remedy by mandamus, appropriate to compel such bodies as respondents to observe the statutory system for the eradication of cattle fever ticks, is expressly provided in section 13 of the act approved February 7, 1919 (Gen. Acts, p. 32). That section provides that the writ may issue "to compel a faithful compliance with this and all other laws cognate hereto."

Consistent with the general prayer in the petition, the court issued the alternative writ. The omission particularly to ask that writ did not prejudice respondents, since the alternative writ was issued. The alternative writ required appearance, on a certain day before the court, not naming the circuit judge. The notice of time and place for appearance served its purpose. If not as apt or definite as it might have been to meet the provisions of section 13 of the act of 1919, no prejudice attended the fault.

[1] It is insisted that the prayer quoted, the alternative writ, and the peremptory writ awarded were and are too indefinite, too general, too uncertain, in respect of the matter or matters sought to be required to conform to the rule that mandamus only issues to compel the performance of specific acts—a rule stated in State ex rel v. Railway Co., 59 Ala. 321, 323, among others cited on brief for appellant. That rule is, of course, established. Where, however, the duty to perform an act requiring the exercise of judgment or discretion is imposed, mandamus will issue to set the judgment or discretion in motion and enforce its proper exercise, so without directing the manner of its exercise. Mobile Ins. Co. v. Cleveland, 76 Ala. 321, 324; State ex rel., etc., v. Mobile Board, etc., 180 Ala. 489, 493, 494, 61. South. 368.

[2] In undertaking officially to suspend all activities under the Tick Eradication Law and attempting to withdraw all means for carrying on the work enjoined by the act of 1919, supra, the county body and its members refused to observe the mandate of the law; declined to perform the function the law required of them in the premises. The

act of 1919, itself imposed the tick eradication regulations upon every county in the state that "shall be at any time partially or completely tick-infested" (section 1); and Mobile was and is one of these counties. The county bodies, boards of revenue or commissioners, are left no discretion as to the imposition or suspension of that system of laws in their respective counties, it being the duty of such bodies "to make adequate appropriations or provision to execute in good faith" laws that define the system, prescribe the measures and means to be taken, and impose the functions upon the boards, officers, and agents described in the laws. Outlays of funds from the county treasuries or depositaries are necessarily required to meet the obligations imposed. The service commanded and the design of the system could not be otherwise afforded. The absence of sufficient funds with which to discharge the duties thus enjoined upon the boards or courts of county commissioners is a consideration that would excuse the discharge of those duties to the extent only that such funds were not available; but to excuse, entirely or pro tanto, the duty's performance, because of lack of funds, this matter of defense must be appropriately asserted and supported. State ex rel. v. Board, etc., 180 Ala. 489, 498, 61 South. 368; 26 Cyc. pp. 319, 320; 13 Ency. Pl. & Pr. p. 730. This excuse or defense must not, however, be created by an arbitrary or capricious exercise of the board's discretion and powers in the management and control of the county's other functions and activities.

With respect to the measure of "appropriations or provision" for a faithful discharge of the duties enjoined, a qualified discretion is reposed in the county governing bodies. These bodies are bound to supply the means with which to construct or install the number of dipping vats prescribed by the state and federal officers or agents. Sections 2 and 3, act approved February 7, 1919 (Gen. Acts, p. 30). The expenditure necessary to perform this duty is a consideration for the boards of revenue or courts of county commissioners. Similarly as to the chemical solution in filling, replenishing, or employing the vats for dipping purposes—the requirements in that respect, both in composition and quality, being directed or prescribed by the state and federal boards, officials or agents engaged in the tick eradication service. The number and compensation of "inspectors" is subject to the discretionary control of the boards of revenue or courts of county commissioners, exercised in good faith. If this "judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof." State ex rel. v. Board, etc., 180 Ala. 489, 494, 61 South. 368, 370. There was no prejudicial error committed in ruling upon motions to quash or demurrers either to the petition or the alternate writ.

[3] Paragraphs 2 and 3 of the answer of respondents are reproduced in the report of the appeal. The answer presents no excuse or defense predicated, in whole or in part, of the absence of county funds to make the "adequate appropriations or provision" required of the county governing bodies. The answer's theory is that up to the date "activities" were stopped, viz.: October 3–15, 1921, "adequate appropriations and provisions" had been made, the proper season for dipping had then passed; that winter dipping was either dangerous to cattle subjected to it, or was impracticable or impossible because a large portion of the cattle in that territory retired into the "swamps" at and after that time. Whether the reasons recited in the answer for the action taken by the board of revenue were well or ill founded, there was reposed in the board no discretion or power to suspend the "activities" enjoined by the laws or to stop the tick eradication service already given, or to determine the time or season when "dipping" should be carried on. The effort of the board of revenue to suspend "activities" or to determine when "dipping" should be done was inconsistent with that body's duty, and was hence, invalid.

[4] Furthermore, the fact that a great portion of cattle in an infested area or section could not be subjected to the treatment, because at large in the "swamps," did not warrant the complete suspension of the service by the board of revenue, though it might justify less provision for the service in material and men to administer the law's design. It satisfactorily appears from the evidence that the "dipping" of only a portion of the cattle in an infected area will contribute toward the eradication of the fever tick and the disease it causes.

[5] It is insisted that the act approved February 7, 1919, supra, offends section 45 of the Constitution, providing that "each law shall contain but one subject, which shall be clearly expressed in its title." Besides a general appeal for the application of section 45 of the Constitution, the particular subjects of complaint are the provisions of sections 1, 2, 4, and 13.

The title of the act reads:

"An act to establish and provide for state-wide eradication of the cattle fever tick (Margaropus annulatus) and any other tick that shall be found to carry a disease-producing infection to cattle or any other domestic animals."

The title of the act refers to a single subject, that described in the title. The title is general, thereby bringing within its purview, as suggested and permitted by the title, all "matters relevant and pertinent"—all

elements of the legislative scheme or design that are germane or cognate to the subject stated in the title. State ex rel. v. Gunter, 170 Ala. 165, 174, 54 South. 283, among others. In practical effect, this court sustained the act, against the present objection to constitutionality, in Dodd v. Comm. of St. Clair, 203 Ala. 271, 82 South. 521. It is argued now that that pronouncement did not involve the point as predicated of the sections mentioned above. The same considerations that led the court to affirm the sufficiency of the title to include provisions there enumerated, require the like conclusions on the present attack. All of the provisions of sections 1, 2, 4, and 13 are comprehended within the general subject described in the title. All of the elements of the system, the subject,'treated in those sections are intimately related to the object foreshadowed in the title. None are foreign or unrelated thereto. When the several decisions cited on the brief for appellants are discriminated through the differences in their titles' terms and the provisions of the acts, they do not invite an opposite conclusion from that stated with respect to this act. For instance, the Miller Case, 158 Ala. 59, 48 South. 496, involved the consideration of a title that referred the act's subject to the restricted subject of municipal government; whereas, section 120 of that Municipal Corporation Act undertook to prescribe a rule of conduct for county governing bodies. The difference between a general title, referring to a single subject, and a title that restricts the subject so as to confine legislative treatment within the limits of the restricted subject, removes the act under review from the influence of decisions condemning acts having titles of the latter class. It is hardly necessary to add that the provisions of this act—requiring the indicated action of the boards of revenue or courts of county commissioners, including the duty to make "adequate appropriations or provision" to effect the legislative design, generally expressed in the title—were well within the scope of the general title and subject of the act, and were germane and cognate thereto.

[6] Several of the assignments of error question rulings of the court on the admission or rejection of evidence. They are without merit. The minutes of the board, disclosing the action in question, were introduced in evidence. Mobile County v. Maddox, 195 Ala. 336, 70 South. 259. Furthermore, the answer admitted the action taken. The duty in the premises was enjoined by law. No demand for the exercise by the board of this judgment or discretion was necessary to justify recourse to mandamus proceedings. That Dr. Cary requested the board to continue the service was immaterial to the issue; but no prejudice could result from its admission over respondents' objec-

tion. Whether it was dangerous to dip cattle in Mobile county during the winter months was also immaterial. So far as the board of revenue is concerned, the impolicy of dipping cattle during that season was a matter to which it could not accord influence. That matter of policy was one for legislative consideration. County governing bodies had not been invested with any right or authority to consider it. The manner of exercise of such qualified discretion as the board had not being subject to control—the legitimate object of this proceeding being to require its continuing exercise where the board had, without authority or power, sought to suspend the service after the date stated—the question asking the opinion of Dr. Cary whether the writ, if issued, could be observed in the detail of the board's action was aside the issue, and was properly disallowed.

The evidence justified the conclusion of fact prevailing with the court below; and the peremptory writ was correctly issued to restore to a state of activity the functions, judgment, and discretion permitted to the board in the restricted sphere indicated under the existing system of law for tick eradication.

The judgment awarding the writ is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.