(116 So. 743)

**CARY, State Veterinarian, v. COMMISSION-
ERS' COURT OF CLARKE COUNTY.
(1 Div. 501.)**

Supreme Court of Alabama.   May 24, 1928.

Rehearing Denied June 21, 1928.

Hybárt & Hare, of Monroeville, and Tucker & Mabry and Paul S. Jones, all of Grove Hill, for appellant.

John E. Adams, of Grove Hill, and Smiths, Young & Johnston, of Mobile, for appellee.

24

SAYRE, J. Appellant, as state veterinarian, filed the bill in this cause in pursuance of section 590 of the Agricultural Code approved August 24, 1927. The purpose of the bill is to compel the commissioners' court of Clarke county to make provision for the execution of the law for tick eradication in that county. In the circuit court of Clarke, sitting in equity, a demurrer to the bill was sustained.

When Hagan v. State ex rel. Batchelor, 207 Ala. 514, 93 So. 600, and State ex rel. Gaston v. Cunninghame, 216 Ala. 423, 113 So. 309, were decided, the writ of mandamus was, by statute, declared to be the appropriate remedy by which to compel the county authorities to proceed for the suppression or eradication of infectious, contagious, or communicable diseases of live stock. Acts 1923, p. 511. The present statute (Act August 24, 1927) provides a remedy in equity by way of mandatory injunction. Of the legislative competency to so provide, we think, there can be no doubt.

The principal objection to the present bill is that it fails to show affirmatively that the financial condition of the county will admit of the expenditure necessary to put the law into operation and effect in Clarke county. A good deal is said in the briefs, pro and con, concerning the action of the state board of agriculture in withholding aid to the county of Clarke in defraying the expense of tick eradication, whereas, such aid has been extended to adjacent counties where similar conditions obtain. But that discussion relates to a question that may not be considered in the present case. The act confers upon the state board discretion in the matter of extending such aid, "in the event the agricultural fund will permit," whereas the clear purpose and mandate of the act is that the county shall make appropriation and provision "to execute in good faith this law," if that can be done without impairing the county's ability to meet the preferred claims catalogued in section 231 of the Code of Alabama 1923, and the act (Agricultural Code of 1927) requires the rendition of such decree, to quote section 591, "as is necessary to compel the making of an adequate appropriation to execute in good faith said law, or as is necessary to prevent the use of any funds of the county until said county is in financial condition to make such appropriation or to prevent the

making of temporary loans or the using of funds not absolutely necessary in the discharge of the involuntary work with which a county is charged"—meaning, as we apprehend, the work declared by general statute to be preferred—"until appropriation is made sufficient for said work." Any decree made in compliance with this law will necessarily involve an inquiry into the financial condition of the county.

Any bill brought under the statute must in effect, though not in form, be a bill for discovery and relief in aid of a public purpose. Every bill in equity partakes in a measure of the character of a bill of discovery because the defendant may be interrogated and compelled to answer fully as to matters within the exclusive knowledge of the defendant. 18 Corpus Juris, 1057. The propriety of the bill in this cause has been determined by the lawmaking power of the state. Knowledge of the defendant county's financial engagements and resources is necessary to the administration of the law—to an ascertainment whether the county authorities are proceeding "in good faith" to execute the law. The assumption of the statute is that the county is able to provide for tick eradication; the burden of showing that the county is in good faith refusing or failing to execute the law rests upon the county, and must be made to appear, if at all, in the answer of the defendant commissioners' court, otherwise, the statute would fail of its purpose for the state veterinarian cannot be required to know as much of the county's finances as the county authorities having them in charge. The lack of funds under the present act, as was the case when the remedy was by mandamus, is defensive matter to be shown by the commissioners' court. Hagan v. State ex rel. Batchelor, supra. We conclude therefore that the principal ground of demurrer was not well taken.

The bill shows that complainant, state veterinarian, gave written notice to the court of county commissioners, at a regular meeting of the said court, "that there were needed for tick eradication, in Clarke county, Ala., 205 concrete dipping vats; that there were 190 old vats in said county that could be repaired and used at a cost of from $6,000 to $7,000, and that the building of 15 new vats, making up the necessary total of vats, viz. 205 vats, could be built at a cost of from $1,200 to $1,500; that there were needed between 4,000 and 5,000 gallons of concentrated approved arsenical dip, which would cost from $1 to $1.25 per gallon; that the number of county paid inspectors to carry on said work of tick eradication would be from 15 to 17 at $100 to $125 each per month; that the number of gallons of paint would be from 800 to 900, at the cost of from $2 to $2.25 per gallon." The point taken against the sufficiency of the above-quoted averment is that it is nothing

more than an estimate, whereas the act (section 578) provides that the state veterinarian shall "determine" the number of inspectors and the amount of material necessary. Defendant commissioners also call attention to section 579 of the Agricultural Code of 1927, reading as follows:

"The county commissioners or county board of revenue in each county shall pay a reasonable salary, as determined by the state board of agriculture, to as many inspectors as shall be required in the county, and the required number to guard county lines, look after isolated vats, quarantined ranges, and premises and quarantined cattle. The inspectors paid by the county shall be determined and appointed and commissioned by the state veterinarian with the approval of the state board of agriculture, as state inspectors, and they shall work under the direction of the state veterinarian or the state and federal inspector in charge of the county."

██ And the demurrer takes the point that a mere estimate is not a determination and that salaries must be determined by the state board of agriculture—which does not appear to have been done. Our opinion is that the state veterinarian has in the present case sufficiently determined those things which the statute (section 578) makes it necessary he should determine and notice of which he shall give in writing to the governing body of the county. To require that he should determine beforehand the cost of vats and tick eradication in the county to the last dollar would be to require the impossible and virtually to emasculate the statute. We think the purpose of the statute is fulfilled and its terms fairly met when the veterinarian gives notice to the governing board of the county of the reasonable and probable cost of the measures to be taken. As for the reasonable salaries to be paid to inspectors and their number, the veterinarian is not required to give the governing body of the county notice of their number and salaries to be paid. So much of appellant's objection as is based upon the failure of the bill to aver that the salaries of the inspectors have been determined by the state board is sufficiently answered by reference to the consideration that the act places the burden of initiative upon the commissioners and the commissioners' court. It will remain for the court of chancery, upon the coming in of the answer and the evidence, if need be, to determine whether the commissioners are making a proper effort in good faith to execute the command of the statute. This may involve the court in the exercise of a function new to it in this state; but that is the legislative will, and the like use of the mandatory writ of injunction is shown by a good number of examples to be found stated in Atchison, T. & S. F. Railway Co. v. Billings, 77 Kan. 119, 93 P. 590.

██ The argument for appellees seems to proceed upon the assumption that the state veterinarian or the state board of agriculture should furnish to the court of county commissioners a complete itemized statement of the cost of installing a tick eradication system in the county and proof that the county treasury will be able to pay for it before any duty devolves upon them; but our view is that the general duty of initiative rests upon the commissioners and their court in the administration of the law, and that when the state veterinarian has furnished the information required by section 578 of the Agricultural Code, whether upon his own motion or upon request from the county body, the county body, failing or refusing to proceed, must be taken to be in default unless and until, in answer to a bill filed, it shall show the court that county finances will not permit the expenditure.

What has been said will suffice to show the reasons for our opinion that the decree sustaining the demurrer to the bill in this cause was error.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.