No. 21,064.

G. M. FREEMAN, *Appellee,* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. SEPARATE ACTIONS—*Consolidated—Aggregate Amount of Recovery—Jurisdiction of Supreme Court.* Three separate actions against the same defendant brought in the justice court, each for less than $100, were appealed by the defendant to the district court, where on defendant's motion, the actions were consolidated and tried as one and judgment rendered in plaintiff's favor for $180, and costs. *Held,* that plaintiff having made no objection to the consolidation of the actions for the purpose of trial, it is too late to urge that this court has no jurisdiction, on the ground that there are three separate actions, each for less than $100.

2. DEFECTIVE CATTLE GUARD—*Cattle on Right of Way—Mitigating Damages—Duty of Owner of Cattle.* In an action to recover damages for injuries to cattle escaping from a pasture by reason of a defective cattle guard maintained on its right of way by the defendant, the plaintiff proved sixteen separate escapes of the cattle and recovered damages of $1.00 per head for each time they escaped and for the cost and expenses of returning them to the pasture. *Held,* that the doctrine that one who is injured by the wrongful act of another can not remain inactive and allow increased damages to accrue and recover them from the wrongdoer, when at slight expense he could have

averted the damages or reduced the amount thereof (*Atkinson v. Kirk-patrick*, 90 Kan. 515, 135 Pac. 579), did not require plaintiff to go upon defendant's right of way and fix the cattle guard after defendant's refusal to comply with his request to repair it, nor require plaintiff to employ a herder to prevent the cattle from escaping until such time as the defendant repaired the cattle guard.

3. SAME—*Element of Damages*. In the action described in the foregoing paragraph the plaintiff was not entitled to recover expenses incurred in going to and from his residence, which was five miles from the pasture, in order to return the cattle.

Appeal from Ellsworth district court; DALLAS GROVER, judge. Opinion filed October 6, 1917. Modified.

*W. P. Waggener, J. M. Challiss,* both of Atchison, and *W. R. Seaver,* of Ellsworth, for the appellant.

*Ira E. Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellee.

The opinion of the court was delivered by

PORTER, J.: G. M. Freeman owned 55 head of cattle and on April 20, 1915, placed them in a pasture in Ellsworth county through which the defendent maintained its line of railway. At various times the cattle escaped from the pasture through a defective and worthless cattle guard maintained by the defendant, and on May 4, 1915, plaintiff brought an action against defendant before a justice of the peace to recover the sum of $90, alleging that 16 head of the cattle escaped on April 28th, and that he was damaged on account of loss of time in putting them back in the pasture, that the cattle were made restless and were damaged thereby; that on May 1st, 11 head of the cattle escaped under the same conditions and with the same damage; that on May 2d, 20 head, and on May 3d, 14 head escaped under like conditions and with like damage.

On May 11, 1915, he brought another action before the same justice of the peace alleging that 20 head of cattle escaped under the same conditions and with like damage on May 4th, 5th, 6th, 7th, 8th and 9th, and he asked damages in the sum of $96.

On May 20th he brought another action before the same justice in which he alleged that on May 10th and 11th, 20 head, and that on May 15th, 4 head escaped; and that 22

head of his cattle escaped from the pasture at three different times on May 16th; and that on the same day 18 escaped; and that at another time 11 head escaped and ran at large, all to his damage in the sum of $91. He asked damages for the cost and expense and loss of time in putting the cattle back into the pasture, and alleged that in each escape the cattle were rendered unruly and restless and were damaged on account of being absent from the pasture.

The three actions were appealed to the district court and there consolidated and tried as one action. The jury returned a verdict in plaintiff's favor for $180, and costs, upon which judgment was rendered. The railway company appeals.

There is a motion by the plaintiff to dismiss the appeal on the ground that there are three separate actions, and that notwithstanding the consolidation of the actions for the purpose of trial, the amount involved in each being less than $100, this court has no jurisdiction. The contention is that the court could not by consolidating the actions deprive the plaintiff of the right to insist that the judgment was final. It is said that the consolidation was forced by the defendant. The plaintiff's counter-abstract shows a motion by the defendant that the three actions be consolidated and tried as one, and the journal entry of the ruling on this motion merely shows that the court sustained the motion. The record shows the consolidation was made without any objection on the part of the plaintiff, and we think the effect was the same as though the plaintiff had consented to the consolidation of the cases as one action. In *Skinner v. Cowley County*, 63 Kan. 557, 66 Pac. 635, three separate actions were consolidated in the district court by consent of the parties, and it was held that one judgment having been rendered which aggregated more than $100, this court had jurisdiction. It would not do to permit the plaintiff to sit by and waive his objections to the consolidation and be in a position to appeal in case the judgment was adverse to him, and on the other hand with the judgment in his favor, question the right of the defendant to appeal from a judgment against it.

The plaintiff testified that the first time the cattle escaped he was telephoned and went over with a horse and buggy, unlocked a gate and drove the cattle in; he thought his time

was worth $2.50.  Over the objection of the defendant he test-
ified that the cattle were damaged a dollar a head each time
they got out.  After the first escape of the cattle he went to the
station agent of the railway company and asked him to have the
section man fix the cattle guard and told him that it would take
but a little time to repair it so that it would turn the cattle.  He
testified on cross-examination that an hour's work by a man
would have repaired the guard so as to keep the cattle in the
pasture.  In answer to questions on cross-examination he
said that half an hour's work would have put the wing of the
cattle guard in shape to prevent the cattle from escaping; that
he did not hire anyone to stay and keep the cattle from getting
out, but knew of no reason why a man could not stand there
and keep the cattle from escaping.

The plaintiff lived about five miles from the pasture.  On
several occasions he employed an automobile to take him to
the pasture, and part of his expenses was for charges for auto
livery to and from the pasture.  One of his witnesses, who had
assisted a number of times in putting the cattle back, testified
that he took three or four pieces of railway ties and put them
up against one side of the cattle guard and the cattle stayed in
and did not get out for three days; that someone, he did not
know who, removed the ties.  He estimated that a man could fix
the place where the cattle got out so as to keep them from
escaping and that the services of a man for so doing would be
worth one dollar.

There are two contentions made by the defendant.  The
principal one is that the evidence of the successive escapes and
resulting damage and expense was not competent because it
was not the proper measure of damages; that after the cattle
got out the first time and the plaintiff was advised of the con-
dition of the cattle guard, it became his duty to minimize his
damage and to place a man at the cattle guard to prevent the
cattle from escaping, or that it was his duty to go upon the
defendant's right of way and fix the cattle guard himself,
which the evidence shows could have been done at the cost of
less than an hour's work.  The defendant relies upon the well-
established rule approved in *K. P. Rly. Co. v. Mihlman*, 17
Kan. 224, stated as follows:

"After a wrong has been committed, it is the duty of the injured party
to make reasonable efforts to prevent an increase or extension of the in-

jury, and if he fails to do so, he cannot recover for such increased injury." (Syl. ¶ 5.)

The opinion in that case quotes from the language of Chief Justice Shaw in *Loker v. Damon,* 17 Pick. 284, as follows:

"In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully, and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open, and passes it frequently, and willfully and obstinately, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly." (p. 234.)

Another case, which the defendant relies upon as directly in point, is *Atkinson v. Kirkpatrick,* 90 Kan. 515, 135 Pac. 579. There a tenant of a store building under lease, by which the landlord covenanted to repair, being sued for rent, set up a counterclaim for damages to stock caused by water from a defective downspout and by leaks in the pipes of a water-closet. The defense to the counterclaim was that the loss resulted from the failure of the tenant to take reasonable precautions to protect his stock after he knew of the risk to which it was exposed. It was held "error for the court to refuse to instruct the jury that even though the landlord had failed to comply with his covenant to repair, the tenant could not remain inactive and allow increased damages to accrue and recover them from the landlord, when at slight expense he could have averted the damages or reduced the amount thereof." (Syl. ¶ 4.)

The duty of the injured party to take reasonable steps to have a machine repaired, which did not meet the conditions of the contract under which it was purchased, and where the defect was one that could easily be repaired, was held controlling in *Frick Co. v. Falk,* 50 Kan. 644, 32 Pac. 360.

Obviously this doctrine correctly states the measure of plaintiff's duty as applied to his conduct each time the cattle escaped. It requiring him to make reasonable efforts to minimize his damages resulting from the negligence of the defendant. Thus, he could not increase his damages by allowing the cattle to roam about for a longer period than was reasonably required to round them up and return them to the pasture. If

Freeman v. Railway Co.

he failed to act with reasonable promptness in this respect he could not recover for any damages resulting from such failure. But was he bound to employ a herder to see that his cattle did not escape and keep one employed until the defendant saw fit to repair its defective cattle guard? Or was it his duty to go upon the defendant's right of way and make temporary repairs to the cattle guard? As to the last question we think in view of the character of defendant's premises—a right of way to be used exclusively by defendant for railway purposes—it would not do to declare that plaintiff was obliged to go upon it and repair the cattle guard. The rule in the case of landlord and tenant which was applied in the Atkinson case, *supra,* rests largely upon the fact that the tenant has possession and can make temporary repairs to prevent loss to his property where the landlord in violation of his contract has failed to do so; and there is no good reason why, in such a situation, the tenant should not act as a reasonably prudent person in the circumstances. He imperils no public nor private rights by doing so, and no rule of public policy is violated by imposing upon him the duty to protect his own property. But, considering the evil consequences which might result from a divided authority between the railway company and the landowner to enter upon and repair the right of way, in attempting to do which the landowner might imperil the lives of travelers and endanger the property of shippers, we must hold that it was not the plaintiff's duty in this case to go upon the right of way and repair the cattle guard.

Upon the other question plaintiff's evidence shows that after the cattle escaped the first time he could have prevented any further escape by employing a herder. The court might assume that this could be done at the current rate of wages, but what that rate was the court can not take judicial notice. Manifestly it was the duty of the plaintiff to make reasonable efforts to prevent the further escape of the cattle, and if it be conceded that this required him to employ a herder, we have, in the absence of any evidence on the subject, no way in which we can determine whether the amount of damages which the plaintiff in fact recovered was more or less than the reasonable cost of the services of a herder night and day for the period from April 29th to May 16th. While the evidence that each

time the cattle escaped, without reference to the length of time they were outside the pasture, they were each damaged just one dollar, is very unsatisfactory, still, whether they were injured and the amount of the damage could only be arrived at by an estimate, and it can not be said that there was no evidence to sustain the finding that they were damaged to this extent.

The plaintiff was allowed to recover however for the cost and expenses paid for the use of an automobile to drive from his home to the pasture. Clearly this formed no part of his damages resulting from the act of the defendant. If he could recover five dollars charges for the use of an automobile because the pasture was five miles from his residence, he might have recovered railroad fare and expenses of traveling 100 miles if he happened to be that far from the pasture when the cattle escaped. The cost of returning the cattle could not be increased by the expenses incurred by the plaintiff in going from his home to the pasture.

The judgment will therefore be modified and the court instructed to strike out all items of expenses incurred by the defendant in going to and from the pasture to return the cattle.