No. 22,154.

M. BREITENBACH, *Appellee*, v. THE ANTHONY & NORTHERN RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. RAILROADS—*Track Dividing Inclosed Pasture—Failure to Maintain Proper Crossing, Fences and Cattle Guards—Damages—Pleadings.* Where a railroad company has constructed its railway track across a farmer's fenced pasture land, cutting it in two, but failed to construct an underground crossing to connect the divided parts of the pasture as it had agreed to do, and failed to construct the statutory cattle guards at its entrance to and exit from the pasture, whereby the farmer's live stock escaped from the pasture, and the farmer was compelled to abandon the use of one part of the pasture, a petition reciting these pertinent facts was sufficient as against a demurrer.

2. SAME—*Measure of Damages—Minimizing Damages.* The evidence showing the expense of providing pasture elsewhere to replace that which the farmer was compelled to abandon because of defective cattle guards was sufficiently accurate to determine the amount of the damages sustained through the loss of the use of the pasture, and this loss was a proper item of damages; and the farmer's restraint of his cattle within a fenced portion of his pasture, and his feeding them in a lot for a longer season than would have been necessary if all his pasture had been available was a sufficient showing of diligence on his part to minimize his damages.

3. SAME—*No Error in Refusing Requested Instructions.* Two instructions which defendant requested and which were refused, examined, and *held* that the subject matter of one of these was adequately and more pertinently given by the trial court, and that the other was properly refused.

Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion filed November 6, 1920. Affirmed.

*A. C. Malloy, R. C. Davis,* and *W. H. White,* all of Hutchinson, for the appellant.

*W. E. Broadie,* of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendant railway company for failing to place an underground crossing, fences and proper cattle guards along and upon its newly constructed railway on the plaintiff's farm.

In 1916, the defendant's railway was built. By contract it acquired a right of way over plaintiff's farm, cutting his pasture into two parts, 60 acres west of the railway track and 80 acres east of it. In the contract the railway agreed to put in an underground crossing to connect the two parts of the pasture. There was some delay in building the fences, especially on the east side of the right of way; no underground crossing was constructed, and the cattle guards first put in where the railway entered and left the pasture were temporary and defective. The plaintiff was thus deprived of the use of 80 acres of his pasture, and he had to hire pasture elsewhere for part of his cattle, and he had to feed his cattle for a longer season than usual.

The jury returned a verdict for the plaintiff in the sum of $240, and answered certain questions:

"Q. 2. . . . Was the use of the pasture impaired for grazing purposes by reason of any acts or omissions of the defendant? A. 2. Yes.

"Q. 3. . . . What acts or omissions of the defendant caused the impairment of the land for grazing purposes and in what way was its use impaired? A. 3. Insufficient cattle guards.

"Q. 4. . . . Was any part of the damages based on the failure of the defendant to install and maintain proper cattle guards? A. 4. Yes.

"Q. 5. If so, what part of said damages have you found was the result of such failure of the defendant? A. 5. All.

. . . . . . . . . . . . .

"Q. 10. Has the plaintiff promptly exercised diligence in preventing or minimizing his damages? A. 10. Yes.

"Q. 11. If you answer the above question in the affirmative, when and what acts did he do to prevent or minimize his damages? A. 11. By keeping his stock in small pasture and feeding them after the railroad was constructed."

The railway company assigns trial errors in overruling its demurrer to the petition, its demurrer to the evidence, and in refusing two instructions which it requested.

Noting these in order, the action was not based alone upon breach of the contract to construct an underground crossing, but also upon breach of the defendant's statutory duty. The petition recited all the pertinent facts, and alleged—

"Plaintiff further says that the defendant has failed and neglected to construct said underground crossing or cattle guards and has failed to fence its said right of way as provided in said contract and as required by law, though often requested to do so."

Whether an obligation to build fences might be implied in the contract from the specific agreement of the railway company that "an underground crossing should be put in"—an obviously useless arrangement unless the right of way was fenced on both sides, is not now material. The trial court instructed the jury that the defendant was under no legal obligation to fence its right of way, and that alleged dereliction of the defendant went out of the case. And while the defendant clearly did obligate itself to construct an underground crossing, that phase of the lawsuit went out of the case by the jury's findings. There remained, in the petition, however, the failure of the defendant to construct the cattle guards—a duty imposed by statute on the railway company. Sections 8459 and 8460 of the General Statutes of 1915, provide:

"Sec. 8459. When any railroad runs through any improved or fenced land, said railroad company shall make proper cattle guards on such railroad when they enter and when they leave such improved or fenced land.

"Sec. 8460. Any railroad company neglecting or refusing to comply with the provisions of sections one and two of this act shall be liable for all damages sustained by any one by reason of such neglect and refusal; and in order for the injured party to recover all damages he has sustained, it shall only be necessary for him to prove such neglect or refusal."

The petition was good against a demurrer.

Defendant's next contention is that its demurrer to the evidence should have been sustained. The evidence tended to show that the cattle guards were defective wooden contrivances, and that the plaintiff's stock passed over them. The plaintiff's son testified:

"We could not use the east pasture in June, because there was nothing to keep the cattle in where the road went through north and south. They would walk right out. They had not cattle guards when the road was first constructed. Wooden cattle guards were put in in the fall of 1916, but the cattle walked over them. The wooden guards were just one by fours and setting up endways about three inches apart and about four or five feet long, lying lengthwise across the track the same way the rails run. . . . Whenever the cattle went across it would break the boards and sometimes the wind filled them up with dirt. . . . We tried a number of times to use the east pasture, but the cattle would get out. . . . I took away the stock from section 29, in May of last year, because we could not pasture them on the east side of the track. We had to feed these cattle in the fall of 1916. We never even had a little pasture

Breitenbach v. Railway Co.

on the west side and had to keep stock in the lot and feed them when they first came through with the road. . . . If we turned them into the east pasture they never stayed there."

The plaintiff testified:

"We were prevented from using it close to six months. · There was close to eighty acres of pasture east of the railroad. My water and feed lot is in that part of the pasture west of the railroad. . . . When that was built we could use the pasture west·of the railroad. They provided barbed wire gates where they filled in between the pastures, but put no cattle guards at that crossing. . . . It was in September when they commenced running the trains that they put up wooden cattle guards. . . . I was prevented from using the east pasture for six months or over. . . . I mean the eighty acre tract on the east side of the railroad. We could not let them into this pasture, because they always went on across."

Elsewhere the son testified:

"I took thirty-two head of cattle over to ·a river bottom pasture and paid one dollar per head per month because we could not pasture them at home."

The defendant cites several cases touching the measure of damages for its failure to make proper cattle guards at the railway entrance to and exit from the pasture. But surely the measure of damages is not·restricted to such of the particular items as are approved in those particular cases. The statute says the injured party may recover "all damages," and "it shall only be necessary for him to prove such neglect or refusal." The damages were sufficiently established; and so, too, were the defendant's neglect and refusal. Loss of pasturage was held to be a proper item of damages in *Railway Co. v. Billings,* 77 Kan. 119, 120, 93 Pac. 590. While it may be correct that the plaintiff might have employed herders to keep the stock from passing over the defective cattle guards it is certain that the wages of such herders would have been a greater item than the total loss of the pasturage, and one, too, which properly might have been assessed against the defendant. (*Freeman v. Railway Co.,* 101 Kan. 516, 521, 167 Pac. 1062.) It is, of course, the duty of the injured party to minimize his damages, and that duty, we think, was fully discharged by the plaintiff when he abandoned the use of the pasture east of the railway and confined and fed his live stock in the smaller pasture, and hired other pasturage for part of his cattle.

Complaint is made of an instruction relating to plaintiff's duty to observe diligence to prevent his cattle passing over the defective cattle guards, but this subject was adequately and more pertinently covered in those given by the court.

Another instruction refused would have declared the law to be that if the plaintiff suffered damage by reason of the defendant's failure to maintain proper and sufficient cattle guards the jury should not consider any consequent damage for a period of more than sixty days commencing from the completion of the railway. Presumably this was because of defendant's viewpoint that the statute limited the damage to some such period unless notice and demand for proper cattle guards were made upon the railway company. The statute, however, contains no such provision; and, moreover, we think, the evidence showed that such notice and demand were repeatedly made.

The court cannot see its way to disturb this judgment, and it is therefore affirmed.